JEREMIAH BRAYTON, Administrator of the estate of
GEORGE SAWIN, Complainant,

*vs.*

DANIEL JONES, Defendant.

APPEAL IN EQUITY FROM JEFFERSON CIRCUIT COURT.

In equity the complainant must recover, if at all, upon the case made by his bill; and however meritorious a case he may disclose by his proofs, if it does not conform to the statements of his bill, he cannot recover.

A complainant may be allowed to amend his bill, when the proofs show a case for relief, but different from that stated in his bill.

The *allegata* and *probata* must correspond in equity as well as at law.

A bill to redeem lies upon a contract for the sale or conveyance of lands, and may be filed, though payment was not made at the precise day required by the contract.

The interest of a vendee in a contract for the sale of real estate may be assigned as security for the payment of money, and the assignee in such case takes the interest of a mortgagee.

Such an assignee may advance money to discharge payments becoming due on the contract, and he has an equitable lien on the premises for money so advanced.

Where an equitable mortgagee enters into possession of the mortgaged premises, without foreclosure, he is chargeable with the rents and profits, and can be required to account for the same, on a bill for an account and to redeem.

BILL to redeem. The bill alleges that the complainant Brayton, is administrator on the estate of George Sawin, deceased, late of Watertown, in said county of Jefferson. That on the 31st day of October, A. D. 1848, the said Sawin, in his lifetime, entered into a contract in writing with Eliphalet Cramer of the city of Milwaukee, for the purchase of lot No. 4 in block No. 46, on the west side of the river in the then village of Watertown, by which Cramer agreed to convey to said Sawin, his heirs or assigns, by a good and valid deed, the lot aforesaid, upon the payment of two hundred and fifty dollars in two years from the date of the contract, and interest at the rate of ten per cent. per annum. Sawin thereupon took possession of the lot, and built thereon a blacksmith shop, and a wagon shop.

with a dwelling over the same, at an expense of about $1,000. On the 28th November, 1848, Sawin paid Cramer $84, and on the 20th April, 1850, $36.30.

The bill further alleges that about the 26th day of February, A. D. 1851, the said Sawin was indebted to the defendant Daniel Jones, in the sum of about $522.93 for store goods and other things, and in order to secure Jones the payment of said sum and interest, and also to procure from said Jones money to pay Cramer the balance due on the said contract, he assigned to Jones his contract with Cramer as security therefor; and on the same day the said Jones and Sawin entered into a written agreement, by which Jones, in consideration of the covenant of Sawin to be performed, agreed to convey to Sawin said lot 4, in fee simple, with usual covenants of warranty; and Sawin agreed to pay the balance due, or to become due upon the Cramer contract, whenever the same should fall due, and to pay Jones $522.93 as follows: one-half within one year, and the other half within two years from that date, with interest, payable annually on the whole sum at the rate of fifteen per cent. per annum, until paid, and to pay all taxes assessed from that date. The agreement also contained the following clause:

"It is hereby mutually agreed and understood by and between the respective parties to these presents, that in case of failure in the performance of either of the covenants or agreements on the part of the said party of the second part, to be performed, the said party of the first part, his heirs, executors, administrators and assigns shall have the right to declare this contract forfeited and determined, and thereupon to recover by distress upon the said premises or otherwise, all the interest which shall have accrued upon this contract up to the day of declaring it forfeited, as rent for the use and occupation of said premises, to have and retain all moneys that may have been paid thereon, to take immediate possession thereof, to regard the person or persons in possession on such termination of this contract as tenant or tenants, holding without permission, if that should be necessary to regain the prompt possession of the premises, and to recover all

damages sustained by reason of holding over without permission."

The bill further sets forth, that about the 23d day of November, A. D. 1851, Jones paid to Cramer the sum due upon that contract, amounting to $168, and surrendered said assigned contract to Cramer, and took from Cramer a valid deed of the premises, to him, the said Jones : that Jones paid to Cramer only the said balance due upon the contract, and took the deed to himself in virtue of said contract and assignment, and that said Jones's interest in the land was that of an equitable mortgagee, for the said sum of $168, and seven per cent interest thereon, from the date of such payment and deed, and for the said sum of $522.93 and interest, at the rate of fifteen per cent. from the said 26th day of February, A. D. 1851. That Sawin died about the 10th day of January, 1852, intestate, leaving a widow and two children, and creditors whose claims amounted to much more than the property left by him, exclusive of his interest in said lot.

The bill further sets forth, that Jones took possession of the premises about the 10th day of March, A. D. 1852, and rented the same, and has ever since received the rents and profits thereof, amounting to a large sum : that Jones did not present his claim for which said lot was held as security, to the commissioners appointed by the judge of probate to examine and allow claims against the estate of said intestate, nor has said claim ever been allowed; but that complainant has always been willing and ready to pay the amount for which said premises were so held as security, whenever the amount should be so adjusted that he could properly and legally pay the same, and is still ready and willing so to do : that Jones has refused to account for the rents and profits, or to substantiate his claim before the Court of Probate.

The bill prays for an account, and that the complainant may be allowed to redeem by paying the amount due, &c.

The answer of Jones admits the decease of Sawin, the character of the complainant as administrator, &c., also the making of the contract by the deceased, during his lifetime, with Cramer,

and the payment by him of the amounts of money thereon as alleged in the bill, and Sawin's indebtedness to him of $522.93, on the 26th day of February, 1851. The defendant admits that Sawin took possession of said lot, and erected the building there-on as alleged, but denies that it cost over $600. He denies that Sawin assigned the Cramer contract to him as security, but avers that some time previous to the 26th day of February, A. D. 1851, Sawin sold, assigned and transferred the said contract, and all his right, title and interest therein and thereto, to W. H. Byron, or to W. H. Byron & Co., of Milwaukee city, for a good and sufficient consideration, and that he, the defendant, purchased said contract from, and the same was duly sold and assigned to him by the said W. H. Byron & Co., to whom the same had been duly assigned and transferred by said Sawin, which said assignment to the defendant was for a good and valid consideration, and was absolute and unconditional without any reservation of any right or interest in, or in favor of said Sawin, and that the said Sawin, at the time of the assignment to the defendant, had no interest, legal or equitable, in the said contract.

The answer further states that the contract of the 26th of February, A. D. 1851, set forth in the bill, is the only contract, agreeement or understanding ever made between the said Sawin and the defendant in relation to said lot, and contains the whole of, and all agreements between the said Sawin and the defendant; and that there never was any agreement or understanding whereby the defendant was to hold said contract or said lot as security merely for the payment of any sum or sums of money, but that the defendant owned and held the same absolutely in his own right, and not in trust for the said Sawin or any other person : that Sawin made default in the payment of the money due on the said Cramer contract, and also according to the second contract, and thereby forfeited all right and claim to have the said lot conveyed to him or his heirs : that afterwards, at the time stated in the bill, he, the defendant, paid Cramer the amount due on his contract, and took a deed to himself and his heirs and assigns forever : that-he paid the amount stated in the bill, and surrendered the contract to Cramer.

The defendant denies that his interest in said lot is that of an equitable mortgagee, but avers, that by the default of the said Sawin, and by the deed of Cramer, the title of the defendant in and to said lot and appurtenances became absolute in law and in equity. He admits that he took possession at the time stated in the bill, and has received the rents and profits ever since, amounting to about $100 per annum; denies that the complainant, or any one else, ever offered to pay him the balance due, after deducting the rents and profits, or that he has ever been ready and willing so to do.

' The defendant further avers in his answer, that Sawin, in his lifetime, well knew, and had notice, that by his default in making payments on the Cramer contract, according to its conditions, he had forfeited all right and claim to said lot, legal and equitable, and that by the deed of Cramer the title had become absolute in the defendant, without any reservation or equity of redemption in the said Sawin; that at the time of the decease of Sawin the lot and appurtenances were not worth the amount agreed to be paid by the contract of the 26th February, 1851; that between the time of the decease of Sawin and the time of taking possession by the defendant, he repeatedly offered to those having charge of Sawin's estate, to convey the lot and appurtenances to any one who would pay the amount agreed to be paid by Sawin, less fifty dollars; that he has never been called upon to account for the rents and profits, and the complainant had never offered to pay him any amount, with a design of redeeming the premises, either with or without deducting the amount of the rents and profits.

William H. Byron, a witness produced by the complainant, testified, that he and Alexander Campbell were merchants in the hardware business, in Milwaukee, under the name and firm of W. H. Byron & Co. During the months of October, November and December, 1850, and January, 1851, George Sawin, who was then doing business as a blacksmith, in Watertown, purchased of that firm, iron and steel, &c., to the amount of $157.67, on credit, and to secure the payment of which, he assigned to that firm a land contract, made by Eliphalet Cramer

with Sawin, to sell and convey to the latter, the lot in Water-town, on which his blacksmith's shop was situated.

In the latter part of February, 1851, Campbell, of the firm of Byron & Co., presented the account to Sawin for payment, amounting to $162.67, which was paid by Daniel Jones, upon an order drawn by Sawin on Jones. Subsequent to that, the said contract was assigned by the firm to Jones, by the order and direction of Sawin. The only claim Byron & Co. had on the land contract was to secure the debt of Sawin, on the payment of which, it was assigned to Jones by the order of Sawin.

Alexander Campbell testified to the same facts as Byron, in every particular.

The Circuit Court decreed the interest of Jones in the said premises to be that of an equitable mortgagee to the amount of Sawin's indebtedness to him, and any other advances necessarily made to protect his interest and estate in the premises; that the complainant was entitled to redeem the premises, and to have a conveyance thereof from the defendant Jones upon the payment of such sum or sums, with interest thereon, as are mentioned in the written contract between Sawin and Jones, set out in the bill of complaint, and such other sums, and interest thereon, as the defendant may have paid to secure and protect his equitable interest in said real estate; also for a reference to state an ac-count of the rents and profits of the amount due the defendant, reserving other questions until the coming in of the report.

From this decretal order the defendant appealed.

*Enos & Hall*, for the appellant.

*D. F. Weymouth*, for the appellee.

*By the Court*, COLE, J.   The only difficulty we have in affirm-ing the decree, rendered in this cause, in the court below, arises from the variance between the case presented by the bill, and that established by the proofs on the hearing.   The bill alleges

that the Cramer contract was assigned to the appellant by George Sawin, the intestate of the appellee, while it appears from the evidence that it was assigned to him by Wm. H. Byron & Co. It is true Byron and Campbell testify that this contract had been assigned to them by Sawin to secure a debt he had contracted with them for iron, steel, &c., during the latter part of the year 1850, and first of 1851; and that when they called upon Sawin for the payment of his account, he referred them to Jones, who settled it; and then, at the direction and request of Sawin, they assigned the contract to Jones. But, notwithstanding the assignment was made to Jones, at the request, and under the direction of Sawin, it does not support the averment that it was made by Sawin himself, in order to secure to Jones the payment of what he owed him, and also to procure from Jones money to pay Cramer the balance due upon the contract. We cannot see, therefore, how the appellee can avoid the necessity of amending his bill in these material points, in order to make it conform to the case made out by his proofs.

We have no doubt but the decree is right upon the merits, and that the appellee must be permitted to redeem the property upon paying the appellant the amount due him upon his contract, and also the principal and interest advanced to Cramer. The appellant should undoubtedly be charged with the rents of the property over and above the taxes and costs of necessary repairs since he has been in possession. We think it is very apparent, from the agreement set forth in the bill, and admitted by the answer, that the appellant was to become vested with the title to the property, and hold it to secure the payment of the amount Sawin owed him. The appellant denies that his interest in the premises, by virtue of this agreement, was that of an equitable mortgagee; but the court cannot take his interpretation as the correct one to be given to it. We must place upon it our own construction, and we entirely concur with the Circuit Court as to its object and legal effect. Stress is laid upon the circumstance that Sawin did not comply with the conditions of the agreement by paying Cramer what was due upon the original contract. If this were so, the court would relieve against the

Brayton vs. Jones.

breach of the condition, as it appears it was designed as a mere security for the payment of the money mentioned in the contract, due or to become due the appellant. Holding the Cramer contract, he could, if he deemed it necessary for the protection of his interests, discharge the amount due upon it, and take the title. The balance of the purchase money had been due on the Cramer contract nearly five months, when he took an assignment of it from William H. Byron & Co., and entered into the agreement of the 26th of February, 1851. And why does he now insist upon the non-payment of this money to Cramer as a breach of the conditions, and a forfeiture of all rights of Sawin under the agreement? He must have very well known that the money could not be paid by Sawin when it became due according to the literal terms of the agreement, for Sawin was already in default. Such, we think, could not have been the intention of the parties.

Whether the amount due the appellant was tendered or not, before the filing of the bill, would only affect the question of costs. If that was made to appear, the Circuit Court, in its discretion, could give costs against the complainant.

But the decree must be reversed, for the reason first assigned, and remanded for further proceedings.