SECURITY STATE BANK, Appellant, vs. MONONA GOLF CLUB, Respondent.

*December 5, 1933—January 9, 1934.*

For the appellant there was a brief by *Bagley, Spohn, Ross & Stevens* of Madison, and oral argument by *Myron Stevens.*

For the respondent there was a brief by *Hill, Beckwith & Harrington* of Madison, and oral argument by *John T. Harrington.*

WICKHEM, J.    On February 19, 1926, the Kayser Estate sold certain property to the defendant Monona Golf Club, upon a land contract, the purchase price being $48,000.    The contract called for deferred payments on principal.    The defendant has paid to the Kayser Estate on account of principal the sum of $23,000, and in addition has constructed an eighteen-hole golf course at a cost of about $1,000 a hole,

and has installed additional improvements of about $6,000 upon the club house and grounds. On February 29, 1928, plaintiff loaned defendant $2,500 with which to meet the principal payment due on March 1, 1928. At the time defendant owed plaintiff $9,000, and on this date defendant executed to plaintiff a collateral note for the full amount of this indebtedness, and assigned its interest in the land contract to the plaintiff. The note form contained a printed provision with respect to the collateral, authorizing plaintiff, upon default, to sell the collateral, without notice, either at public or private sale. The assignment of the land contract provided, upon default by the defendant club, that the plaintiff bank might proceed as provided by law for the enforcement of the payment of such indebtedness and the foreclosure of all the right, title, and interest of the said Monona Golf Club in and to the land contract. On November 15, 1932, the defendant, still owing the plaintiff $9,000, executed a renewal collateral note similar to the foregoing one, except that this note, in the space designed for description of the collateral, had inserted the words "land contract." Thereafter the plaintiff bank went on a waiver basis. The defendant having funds on deposit at the time of the waiver, plaintiff credited upon the note the dividends due under the waiver plan, reducing the principal to $7,756.82. On March 25, 1933, plaintiff notified defendant that it would sell the collateral on April 3, 1933. The sale was adjourned until April 5, 1933, at which time defendant's interest in the land contract was offered at private sale and purchased by the plaintiff for $5,000.

The first error claimed by plaintiff is that the court held the sale under the collateral note to be null and void. Plaintiff concedes that only personal property may be the subject of a pledge. Hence, plaintiff is required to contend that, at least in some of its aspects, the transaction involved the pledge of personal property. Plaintiff relies upon *Gettelman*

*v. Commercial Union Assur. Co.* 97 Wis. 237, 72 N. W. 627, and *Brayton v. Jones,* 5 Wis. 117. In the *Gettelman Case,* which dealt with the question whether the assignment, absolute in form, of a vendee's interest under a land contract, was in fact given as security, the court held that the assignee had no right, title, or interest in the land contract "except that he held it as a pledge securing him for the repayment of his loan." In *Brayton v. Jones, supra,* this court said that the vendee under a land contract may pledge his interest in the contract. Both the *Gettelman* and *Brayton Cases* are authority for the proposition that an assignment, absolute in form, may be shown to have been intended merely as a security, and not for any proposition advanced by plaintiff in this case. Neither opinion was addressed to the question with which this court is here confronted. Plaintiff cites as bearing upon the question cases involving school-land certificates, in which the holder has the same relation to the title as does the vendee under a land contract. In *Dodge v. Silverthorn,* 12 Wis. *644, it was stated that the "certificates are analogous to an ordinary land contract between individuals for the sale and conveyance of real estate." In *Mowry v. Wood,* 12 Wis. *413, plaintiff gave defendant his note, and "at the same time, as collateral security for the payment of the note, deposited with the defendant four school-land certificates." It was held that "although the certificates, as contracts in writing, may, for some purposes, be regarded as chattels or choses in action, yet it was evidently not the intention of the parties to pledge them as such, but to pledge Wood's estate in the land represented by them, as a security for the payment of the debt." It was further held that Wood had an equitable estate of inheritance in the land, subject to non-fulfilment of the conditions; that it was an interest in the fee, and that the deposit of the certificates without assignment amounted to an equitable mortgage of the debtor's interest in the land. In

*Jarvis v. Dutcher,* 16 Wis. \*307, the court, referring to
*Mowry v. Wood,* stated:

"Recognizing .the distinction between the estate conveyed,
which is equitable, and the certificate itself, as an instrument
of evidence, to which the owner may have a legal title, we
endeavored to show that the latter, that is, the legal title to
the certificate, could not be passed without an assignment.
. . . But we nowhere said . . . that the estate could not
be transferred without such a formula."

From these cases plaintiff contends that a vendee under
a land contract may give as security an estate having the
quality of personalty, to wit, the equitable estate, or one
having the quality of realty, to wit, the legal estate, and that
it is a matter of intention as to which result has followed
a given transaction.

In the instant case plaintiff contends that the assignment
of the land contract, under which the bank could foreclose,
constituted an assignment of the legal estate, and that in
addition the collateral note constituted a pledge of the eq-
uitable or personal estate. Plaintiff's position cannot be
sustained. Defendant was the equitable owner of the land
which it held as vendee under the land contract. So far as
the property is concerned, it had no legal title. It did have
legal title to the evidence of its rights,—the document con-
taining the terms and evidencing the land contract. Con-
ceding that the document might be pledged for some pur-
poses, and that this would constitute a pledge of personalty,
the intended security for the loan was the debtor's equitable
estate in the real estate described by the land contract. This
was accomplished by a legal assignment, which amounts to
an equitable mortgage because of the quality of defendant's
estate, and by a deposit of the land contract, which amounts
to the same thing under the doctrine of *Mowry v. Wood,
supra,* and *Jarvis v. Dutcher, supra.* The assignment was
made expressly as security only. In so far as plaintiff has

any title to the land contract, it derives such title not from the deposit but from this assignment, and it must foreclose in accordance with the terms of the assignment. It will be noted that in the *Jarvis Case* it was expressly held that the title to the certificate could not be vested without assignment, although its mere deposit would be effective to accomplish an equitable mortgage of the estate evidenced by it. Plaintiff was therefore relegated to the remedy of foreclosure.

It is next contended by plaintiff that the court had no power to insert in the judgment the provision limiting the period of redemption to March 1, 1934, "unless prior thereto such period is extended by this court on such terms as the court may impose." Plaintiff makes no claim that the period granted is too long, and concedes that in view of the large amount of money expended by defendant in payments and improvements, this period is entirely reasonable. It is not seriously claimed that a longer period could not, without abuse of discretion, have been granted. It is the claim that the sole power of the court in the premises was to prescribe a certain limited time, and that having done so, the power was exhausted and it could not reserve the right to extend the period, especially at a later term of court. It is true that it is the duty of the court to prescribe a time within which the vendee might redeem. *Oconto Company v. Bacon,* 181 Wis. 538, 195 N. W. 412; *Godwin v. Miller,* 199 Wis. 497, 226 N. W. 954. The period so limited is largely within the discretion of the trial court. *Dickson v. Loehr,* 126 Wis. 641, 106 N. W. 793.

Since there is no showing that the court, under the circumstances, might not have provided for a longer period of redemption, the only obstacle we perceive would be the rule that a trial court has no control over a judgment after the term has expired except that given by sec. 269.46, Stats., to relieve within one year from a judgment entered through

mistake. If the court, in the original judgment, had not reserved the power to extend the redemption period, the contention of plaintiff would doubtless be valid, but we see no reason why the court might not so reserve the power. The judgment in such form is interlocutory in that it is one "substantially disposing of the merits, but leaving . . . issue of fact to be decided or some condition to be performed, in order fully to determine the rights of the parties." Sec. 270.54, Stats. *Gates v. Paul,* 127 Wis. 628, 107 N. W. 492.

It being within the power of the court to insert the proviso in question, and there being no ground on which it can be concluded that this constituted an abuse of discretion, the judgment must be affirmed.

*By the Court.*—Judgment affirmed.