PETERSON and wife, Respondents, v. LaMAY and wife, Appellants: JOHNSON and wife, Defendants.

*No. 118.    Argued October 3, 1972.—Decided October 31, 1972.*
(Also reported in 201 N. W. 2d 507.)

For the appellants there were briefs by *John B. Brickhouse,* attorney, and *David G. Walsh* of counsel, both of Madison, and oral argument by *Mr. Brickhouse.*

For the respondents there was a brief and oral argument by *Ray A. Peterson* of Madison.

HEFFERNAN, J.  In *Kallenbach v. Lake Publications, Inc.* (1966), 30 Wis. 2d 647, 142 N. W. 2d 212, the incidents and characteristics of a land contract were discussed. The vendor of a land contract retains legal title to the property to secure the balance due on the purchase price. Upon default, one of his options is the affirmation of the contract in a suit for specific performance. As a part of this remedy, the lands may be sold and the vendor can satisfy his right to the contract price out of the proceeds of the sale. Because of his contractual agreement with the vendor to pay the price, a purchaser is liable for any deficiency.

On this appeal, the LaMays contend that, as assignees of the original contract, they acquired the right to keep possession of the land if payments were made; but, they argue, they have no personal liability for the underlying obligation to pay the purchase price.

Although no contractual agreement was ever made between the vendors and the assignees of the contract, the trial judge held that, by the assignment of the contract, the assignees became personally liable for the purchase price. The general law in the United States and in Wisconsin is to the contrary. The general rule appears in 3 Williston, *Contracts* (3d ed.), p. 109, sec. 418A:

". . . in regard to contracts for the sale of land the great majority of decisions strongly take the position that the assignee of the purchaser does not become bound to the vendor for the price in the absence of an express assumption of the duty in his contract with the assignor. The analogy to the transfer of mortgaged land has doubtless been influential."

As a consequence of this general rule, the cases uniformly hold that an assignment alone does not impose personal liability upon an assignee. In the absence of the assumption of the agreement to pay, no deficiency may be assessed against the assignee by the original vendor. *Lonas v. Metropolitan Mortgage & Securities Co.* (Alaska 1967), 432 Pac. 2d 603, 604; *Treadway v. Western Cotton Oil & Ginning Co.* (1932), 40 Ariz. 125, 10 Pac. 2d 371; *Tarpey v. Curran* (1924), 67 Cal. App. 575, 228 Pac. 62; *Pumphrey v. Kehoe* (1971), 261 Md. 496, 276 Atl. 2d 194; *Taylor v. Groll* (1939), 288 Mich. 590, 286 N. W. 88; *Boulevard Plaza Corp. v. Campbell* (1959), 254 Minn. 123, 94 N. W. 2d 273; *Langel v. Betz* (1928), 250 N. Y. 159, 164 N. E. 890; *Adron v. Evans* (1927), 52 So. Dak. 292, 217 N. W. 397; *Water Users' Asso. v. Building Asso.* (1931), 43 Wyo. 41, 297 Pac. 385. *See, generally,* Friedman, *Contracts and Conveyances of Real Property,* p. 64 *et seq.,* sec. 2.1; 3 *American Law of Property,* p. 106 *et seq.,* sec. 11.38.

The cases which analyze the foundations for the rule base their holding on the lack of contractual privity between the vendor and the assignee of the vendee's

interest. In the case of a bare assignment, there is privity of estate between the vendor and the assignee but not of contract. The obligation to pay is not a covenant running with the land. It is a personal obligation based on contract and enforceable only against those who have a contractual obligation to pay the purchase price.

In order for an assignee to be personally liable for a deficiency judgment, it is necessary either that he negotiate a contract directly with the vendor, producing a novation, or that he enter into an express agreement with the purchaser assuming the contractual obligation to pay. Under the second alternative, while there would be no privity of contract with the vendor in the common law sense, the assignee would be liable to the vendor under the third-party-beneficiary theory.

We believe the analogy with mortgage law pointed out by Williston, *supra,* is appropriate here. In *Redhead v. Skidmore Land Co.* (1927), 194 Wis. 123, 125, 215 N. W. 937, we stated:

". . . the law of Wisconsin is settled that . . . there is no implied promise in law or fact to pay the mortgages when title to land is taken subject to mortgages and there is no express agreement in that respect."

That case pointed out that, even though mortgage payments had been made and the price was computed only after consideration of the outstanding mortgage balance, there was no implied promise to pay the contractual price for the land.

The analogy to mortgage law is relied upon in land-contract transactions in this jurisdiction. *Wisconsin Real Estate Law* (1972), sec. 8.07, referring to the assignment of a land contract, points out:

"Once the assignment or deed is completed the assignee steps into the shoes of the buyer. He may or may not be personally liable to make the remaining payments

under the contract. That depends on what he has agreed. On this point look ahead to Section 10.07 on the analogous problem under transfers of mortgaged real estate."

While the vendors rely upon a clause in the original contract that purports to bind any assignee to all the provisions of the original land contract, such clause, to which the assignee is not privy, constitutes only an agreement between the original purchaser and the vendor. Only if the subsequent assignment between the purchaser and the assignee incorporates that clause does any obligation to pay the purchase price arise on the part of the assignee.

The assignment herein is barren of any reference to any obligation to pay the contract price; and, in fact, the assignees are not signatories to the assignment. As in all contracts, it is the intent of the parties that governs. There is no evidence of any intent, express or implied, that the LaMays agreed to pay the purchase price. The court erred in making them a party to the deficiency judgment. That portion of the judgment assessing them with the deficiency must be reversed.

*By the Court.*—That portion of the judgment appealed from is reversed.