CORACI and wife, Plaintiffs and Respondents, v. NOACK and wife, Defendants: DREWRY, Defendant and Respondent: TROJAN SEED COMPANY, INC., Defendant and Appellant.

*No. 171. Argued October 29, 1973.—Decided November 27, 1973.*
(Also reported in 212 N. W. 2d 164.)

For the appellant there was a brief by *James F. Pressentin* and *Berk & Pressentin*, all of Green Bay, and oral argument by *James F. Pressentin*.

For the defendant-respondent there was a brief by *Krueger & Leege* and *Richard J. Krueger*, all of Oconto, and oral argument by *Richard J. Krueger*.

HANLEY, J. The following issues are raised on this appeal:

1. Does the assignment of a land contract by purchaser bar the assignee from exercising the rights of the assignor in completing the purchase or from redeeming in the event of foreclosure of the land contract?

2. Is an alleged judgment creditor of assignor adverse to the assignee of a land contract of judgment debtor on an appeal by the assignee when the judgment was docketed after the recording of the assignment of land contract and was discharged in bankruptcy?

*Rights of assignee in strict foreclosure.*

It has been well established that absent a provision to the contrary, the interests of both the vendor [1] and the purchaser [2] of a land contract are generally assign-

---

[1] *Foster v. Lowe* (1907), 131 Wis. 54, 110 N. W. 829; 92 C. J. S., *Vendor & Purchaser*, p. 192, sec. 311.

[2] *Security State Bank v. Monona Golf Club* (1934), 213 Wis. 581, 252 N. W. 287; 92 C. J. S., *Vendor & Purchaser*, p. 190, sec. 310.

able. However, since the obligations created under the land contract are personal and do not constitute covenants running with the land,[3] it is within the best financial interests of the vendor to restrict the alienability of property which is subject to the land contract.

"In the case of a bare assignment, there is privity of estate between the vendor and the assignee but not of contract. The obligation to pay is not a covenant running with the land. It is a personal obligation based on contract and enforceable only against those who have a contractual obligation to pay the purchase price."[4]

It is because of the personal nature of the land contract that the vendor often desires to limit alienability of the property subject thereto. Without such a limitation on the alienability of the purchaser's interest in the property subject to the land contract, said property may be wasted and the usually large security interest of the vendor imperiled.

"Normally, where a restraint on the alienation of the vendee's equitable interest under a land contract is imposed, the initial payment is but a small part of the agreed purchase price and payment of the balance is deferred to a substantially later date, or split into periodic small installments. In such case, it is important to the vendor that the particular individual be kept in contact with the land as an inducement to performance of his obligations." Restatement, *Property*, sec. 416, Comment *a*, p. 2249.

Thus the vendor generally incorporates a nonassignability provision in the land contract.

Courts have generally looked with favor upon such nonassignability provisions because of the need to protect the security interests of the vendor in the property

---

[3] *Peterson v. LaMay* (1972), 56 Wis. 2d 145, 201 N. W. 2d 507.
[4] *Id.* at page 149.

subject to the land contract.[5] However, once full performance is tendered by the purchaser or his assignee the purpose for which the restriction was incorporated ceases to exist.

"A promissory restraint or forfeiture restraint on alienation imposed by a vendor on the interest of a vendee under a contract for the sale of an interest in land is valid until the vendee shall have become entitled to receive a deed . . . ." 4 Restatement, *Property,* p. 2448, sec. 416.

This nonassignability provision in a land contract is for the benefit of the vendor to safeguard performance, and if performance is tendered the restriction becomes moot and of no consequence.

To permit enforcement of the nonassignability provision at this juncture would serve no purpose save for the imposition of a forfeiture upon the assignee. A court of equity will not permit such a result. A forfeiture provision inserted merely for security for payment may be excused upon tender of payment, said provision being purely collateral for the payment of money.[6] Thus, the courts have ruled that an assignee of the purchaser of a land contract may commence an action in strict performance under said land contract upon the tendering of the principal and interest due under said contract despite the presence of a nonassignment clause in the land contract.[7]

Similar to an action for specific performance, an action for strict foreclosure of a land contract is an action

[5] *See* Goddard, *Non-Assignment Provisions in Land Contracts,* 31 Mich. L. Rev. (1932), 1; 148 A. L. R. 1361; 92 C. J. S., *Vendor & Purchaser,* p. 192, sec. 311; 4 Restatement, *Property,* p. 2448, sec. 416; *Coast Bank v. Minderhout* (1964), 61 Cal. 2d 311, 38 Cal. Rptr. 505, 392 Pac. 2d 265.

[6] 30 C. J. S., *Equity,* p. 891, sec. 56 (b).

[7] 55 Am. Jur., *Vendor & Purchaser,* p. 843, sec. 432.

in equity.[8] The nature of the remedy of strict foreclosure was discussed in *Kallenbach v. Lake Publications, Inc.* (1966), 30 Wis. 2d 647, 142 N. W. 2d 212, wherein the court determined that the purpose of such an equitable action was to terminate any presently existing right on the part of the purchaser to perform the land contract and to confirm the legal title of the vendor in the property subject to that land contract by foreclosing whatever equitable interest the purchaser has in that property. Since strict foreclosure is an equitable action, and since a court in equity seeks to avoid a forfeiture, a period of redemption is, within the discretion of the court, granted to the purchaser of the land contract.[9] Similarly, because of the equitable nature of a strict foreclosure action, the court may, in appropriate circumstances, grant a right of redemption to the assignee of the purchaser. Such may be the case in spite of the presence of a nonassignment provision in the land contract.[10] The fact that such a nonassignment clause was availed of solely for the purpose of providing the vendor financial security and the fact that upon tendering of the unpaid balance in full the purpose of said provision being fulfilled may constitute such circumstances.

On the record before us in this case, we are unable to determine whether or not, pursuant to the equitable principles that are imperative in an action for strict foreclosure, such an equitable remedy should have been granted by the trial court. The record is incomplete.

The court entered its judgment as a matter of law, based only on testimony of plaintiff, taken at another hearing, by consent, as an accommodation to the plain-

[8] *Exchange Corporation of Wisconsin v. Kuntz* (1972), 56 Wis. 2d 555, 202 N. W. 2d 393.

[9] *See Kallenbach v. Lake Publications, Inc., supra.*

[10] *Cf. Mutual Federal Savings & Loan Asso. v. Wisconsin Wire Works* (1973), 58 Wis. 2d 99, 205 N. W. 2d 762.

tiff. The other parties to the action were not granted an opportunity to present any evidence.

Thus, we remand this action for further proceedings in order that the trial court may determine whether, in accordance with equitable principles, foreclosure will be granted as against the interest of Trojan in this action.

*Adversity of judgment creditor.*

The respondent Drewry secured three separate judgments against the Noacks, the latter two being entered on May 7, 1970. These judgments were docketed in Oconto county, the situs of the real estate in question, on May 8, 1970. At trial the respondent contended that said judgments constituted liens in favor of the respondent on the real estate of the Noacks. The trial court ruled against Drewry and held that since the title to the real estate remained in the Coracis, the vendors, subject to the land contract, the judgments of Drewry do not attach until said property is fully conveyed and thus are not liens upon the real estate. The respondent Drewry challenged this ruling of the trial court on appeal.

Before we can determine whether the judgment lien of Drewry attaches to the property in question, we must determine whether, pursuant to sec. 274.12, Stats., the defendant-respondent Drewry has waived his right to appeal on said issue.

Drewry raised this issue of the attachability of his judgment liens to the realty of the Noacks pursuant to a motion to review under sec. 274.12 (1), Stats. It is contended by the appellant, Trojan, that this issue could only be raised by a cross-appeal under subs. (3) and (4) of sec. 274.12, rather than the motion to review. A motion to review under the statute may be brought by a respondent adverse to the appellant upon the latter's appeal to review any rulings prejudicial to him whereas a respondent who is not adverse to the appellant on his appeal is required to cross-appeal within thirty days.

We think that Drewry is not a party adverse to the appellant Trojan on this appeal. Adversity on appeal is contingent upon the "subject matter" of the appellant's appeal.[11] Since the "subject matter" of Trojan's appeal relates to the foreclosure of the land contract itself while Drewry's appeal relates to the attachability of a judgment lien, adversity is not present. Thus, if we were limited to sec. 274.12 (3), Stats., Drewey's right to appellate review would be deemed waived. We, however, do not deem sec. 274.12 (3) to be controlling.

Trojan appealed from the whole of the judgment and notice of this appeal was served on all parties. This notice of appeal conferred personal jurisdiction on the court as to all parties served.[12] Similarly, this court is interested in an orderly procedure upon appeal wherein a settlement of the entire controversy can be accomplished without successive appeals.[13] Thus, pursuant to sec. 274.12 (6), Stats., we deem Drewry to be an additional party to this appeal and hold that the lower court's judgment as to that aspect prejudicial to Drewry is properly before us.[14]

Drewry contends that since his judgments were properly docketed, that under sec. 270.79 (1), Stats., these judgments constitute a lien on the real property of the Noacks. While such a lien may be created as a result of sec. 270.79 (1), said statute does not grant priority to the judgment creditor over the implied equitable lien of the vendor.[15] Similarly, Drewry's judgment liens may be voided pursuant to sec. 270.91 (2), because of the

[11] *Novak v. Delavan* (1966), 31 Wis. 2d 200, 143 N. W. 2d 6.
[12] *Turk v. H. C. Prange Co.* (1963), 18 Wis. 2d 547, 119 N. W. 2d 365.
[13] *American Wrecking Co. v. McManus* (1921), 174 Wis. 300, 181 N. W. 235, 183 N. W. 250.
[14] *Novak v. Delavan, supra.*
[15] *Church v. Smith* (1876), 39 Wis. 492; Church, *Equitable Conversion in Wisconsin,* 1970 Wis. L. Rev. 404.

subsequent bankruptcy action on the part of Noack. Any discussion of these and other issues would, however, be premature. Such issues would necessitate discussion only if there exists a real property interest upon which a judgment lien may attach. However, since the cause must be remanded to the county court for a further determination whether, pursuant to equitable principles, strict foreclosure should be granted in this action, any question as to the interest of Drewry may be moot. If the county court refuses to entertain Coracis' action for strict foreclosure and permits the appellant the opportunity to tender full payment of all outstanding liabilities under the land contract, no interest in real estate upon which the judgment lien could attach would remain with the Noacks.

*By the Court.*—Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.