WESTFAIR CORPORATION, Plaintiff-Appellant, v. KUELZ, and others, Defendants: MCINTOSH, and another, Intervening Defendants-Respondents.

Court of Appeals

*No. 78–534. Submitted on briefs April 17, 1979.—*
*Decided May 31, 1979.*
(Also reported in 280 N.W.2d 364.)

632

For the plaintiff-appellant, the cause was submitted on the briefs of *Edward S. Grodin* of *Grodin & Grodin,* Milwaukee.

For the intervening defendants-respondents the cause was submitted on the briefs of *John J. Ottusch* of *Cook & Franke,* Milwaukee.

Before Decker, C.J., Cannon, P.J., and Moser, J.

MOSER, J.   This is an appeal from the judgment of the circuit court granted to intervenors, Garrett O. McIntosh and Garrett W. McIntosh (McIntosh) against the plaintiff-appellant, Westfair Corporation (Westfair). The judgment orders Westfair to accept the amount of $55,791.33 as the proper amount of money to pay the equity of redemption for said premises, and in return to

deliver a warranty deed to McIntosh for real property located at 555 South 84th Street in the city and county of Milwaukee, Wisconsin.

On September 16, 1975, Westfair sold a land contract interest in the above premises to Russell L. Kuelz (Kuelz) and Paul L. Pearson. Pearson's interest was subsequently transferred to Kuelz. On November 13, Kuelz hired Lemberg Electric Co., Inc. (Lemberg) to do electrical work on the car wash premises. On March 20, 1976, Lemberg completed its work and, on September 17, filed a mechanic's lien claim against the property. On December 8, Lemberg commenced a lien foreclosure action against Kuelz.

On May 12, 1977, Kuelz defaulted on the Westfair land contract payments. On September 2, Lemberg obtained a default judgment of mechanic's lien foreclosure which was entered in the county court of Milwaukee county providing for foreclosure of Kuelz's interest and authorizing a sheriff's sale of Kuelz's interest in the property.

On October 24, 1977, Westfair commenced an action for strict foreclosure of the land contract against Kuelz. On November 8, a *lis pendens* was filed in the Westfair foreclosure action.

On November 14, 1977, there was a sale on the Lemberg foreclosure of mechanic's lien. Lemberg purchased all of Kuelz's interest at the foreclosure sale for $100. On November 16, Lemberg received a sheriff's deed to the premises but did not file the sheriff's deed until April 14, 1978.

On February 7, 1978, Westfair filed its amended complaint in strict foreclosure of the land contract against Kuelz, Lemberg and others. On February 24, Lemberg answered Westfair's complaint asking that its rights be adjudicated but made no demand that it be granted any equity of redemption. May 5th was the date of the default hearing on the Westfair strict foreclosure. At that

time Lemberg stipulated that its interest in the land is subordinate to that of Westfair. Findings of fact, conclusions of law, and a judgment of foreclosure were signed by Judge Barron on May 24, 1978. The trial court granted an equity of redemption period alternatively for 45 to 60 days depending on the state of the ability of the parties to redeem.

Kuelz did not attend this proceeding; the only parties to attend were the attorney for Westfair and the attorney for Lemberg. Judgment was entered for strict foreclosure on May 30, 1978.

When this period of redemption was given by the trial court, the only party interested in that redemption period was Lemberg. It is clear from the record that Lemberg wanted a 60-day redemption period in order to allow McIntosh sufficient time to finance the purchase of Lemberg's interest in the land contract property, within the period of redemption. Westfair's attorney, who was also present, knew of these negotiations.

On June 26, 1978, Lemberg assigned its interest to the McIntoshes by a quit claim deed. The next day, the McIntoshes tendered the balance due on the land contract to Westfair's then attorney, James Clark. On July 25, Westfair rejected McIntosh's tender.

There was a motion to intervene in this action by the McIntoshes with a counterclaim for strict performance attached to said motion. On August 8, Westfair filed its reply and affirmative defenses. There is no formal order allowing the intervention but the trial court allowed intervention. A trial of the McIntoshes' counterclaim and the reply of Westfair was held on September 15, 1978, at which time the trial court granted judgment to McIntosh and filed a written memorandum decision September 18, 1978. An order for judgment was signed and filed September 29, 1978. Westfair appeals from the resultant judgment entered October 4, 1978.

## LAND CONTRACTS

Where a land contract is executed the vendee/purchaser (Kuelz here) becomes the owner of the land in equity, by equitable conversion, while the vendor/seller (Westfair here) retains legal title to secure the balance due on the purchase price.[1] When the purchaser defaults in his payments under the land contract, one of the remedies of the seller is strict foreclosure. This type of foreclosure is an equitable proceeding in which the seller affirms the land contract and offers to complete the terms of the agreement. Only when the purchaser fails to perform the full agreement by paying the balance due on the land contract within the time set by the court, are the purchaser's rights thereunder foreclosed.[2] The period of redemption rests in the sound discretion of the trial court.[3]

There is no question in this matter that Kuelz defaulted in the payment requirements of the land contract. There is no question Westfair was entitled to commence and obtain a judgment of strict foreclosure, as it did. There is no question that the trial court properly granted a short 45 to 60 day optional period of equity of redemption. The real question is who was granted that equity of redemption period?

Westfair claims the equity of redemption was granted only to Kuelz, the land contract vendee/purchaser. The McIntoshes claim that since Lemberg obtained a judgment of foreclosure on its mechanic's lien claim and purchased Kuelz's interest at the sheriff's sale, that Lemberg had sole claim to the equity or right of redemption. The McIntoshes further claim Lemberg could assign that right of redemption to anyone and they did so by

---

[1] *Kallenbach v. Lake Publications, Inc.*, 30 Wis.2d 647, 651, 142 N.W.2d 212, 214 (1965).

[2] *Kallenbach*, n. 1 *supra* at 652, 142 N.W.2d at 215.

[3] *Kallenbach*, n. 1 *supra* at 656, 142 N.W.2d at 317.

quit claim deed to the McIntoshes, thereby enabling the McIntoshes to pay the amount of redemption and receive the warranty deed from Westfair.

The record clearly reflects, without any possible doubt, that Westfair, Lemberg and the trial court treated Lemberg as the party with the equity or right of redemption at the May 15, 1978, default proceeding in which Westfair and Lemberg were the only adversary participants. The sole issue at that proceeding was how long a period of redemption the trial court would grant. It is obvious from the record, when the equity of redemption period was argued between Westfair's attorney and Lemberg's attorney, that Lemberg was negotiating with the McIntoshes to pay the balance due on the land contract as well as attorney's fees and costs of the Westfair foreclosure. More important, however, is the fact that Westfair's attorney was well aware of these negotiations and acquiesced in them, albeit he argued for a shorter redemption period.

We note again that strict foreclosure is an equitable proceeding and one of the maxim's of equity is the doctrine of clean hands. Courts in Wisconsin recognize the equitable doctrine of clean hands and that a plaintiff who seeks affirmative equitable relief must have "clean hands" before the court will entertain his plea.[4] Though we are sorely tempted to invoke the rule of clean hands against Westfair in this instant case because of the facts stated above, we need not.

## MECHANIC'S LIEN FORECLOSURE

Modern statutes allow mechanic's liens to attach to equitable interests in land.[5] Wisconsin follows this ap-

---

[4] *S & M Rotogravure Service, Inc. v. Baer*, 77 Wis.2d 454, 466, 252 N.W.2d 913, 918–19 (1977).

[5] 53 Am. Jur.2d *Mechanics Liens*, sec. 42, 555.

proach by allowing mechanic's liens to attach to the equitable interest, which a land contract vendee/purchaser obtains in real estate, to the extent of that equitable interest. These claims must be confined to the actual interest that the land contract purchaser has at the time that the mechanic provides the service.[6] This theory of law is further buttressed by the statutory definition of an "owner" which means the owner of any interest in land who personally entered into a contract for the improvement of the land.[7] The mechanic's lien given is on all interest in the land belonging to the owner.[8] Such mechanic's lien is enforceable by foreclosure.[9] The mechanic's lien foreclosure judgment shall direct that the interest of the owner or so much as is necessary to pay the lien claimant is to be sold.[10]

Here there is no issue between the parties that Lemberg foreclosed its mechanic's lien properly. The record reflects that the default proceeding for the foreclosure culminated in a mechanic's lien foreclosure judgment requiring a sheriff's sale of all Kuelz's interest in the subject property; and that after there was a sale, Kuelz, and all other persons claiming under him, then would be barred and foreclosed of all right, title, interest and equity of redemption in and to said premises, or any part thereof. There is no question that there was such a sale; that Lemberg bought out Kuelz's interest in the property for $100 on November 14, 1977, and that Lemberg received a sheriff's deed on November 16 to Kuelz's equitable interest in the land,[11] since Kuelz was an owner

---

[6] *Milwaukee Loan & Finance Co. v. Grundt*, 207 Wis. 506, 509, 242 N.W. 131, 132 (1932).

[7] Sec. 289.01(2)(d), Stats.

[8] Sec. 289.01(3), Stats.; *Grundt*, n. 6 *supra* at 509, 242 N.W. at 132 (1932).

[9] Sec. 289.09, Stats.

[10] Sec. 289.10, Stats.

[11] Secs. 289.10 and 289.12, Stats.; *Grundt*, n. 6 *supra* at 509, 242 N.W. at 132.

of an equitable interest in the land in question at the time of Lemberg's providing materials and labor.[12]

We are satisfied that at the time of Westfair's default strict foreclosure hearing in the trial court, Kuelz had no interest in the land herein. The interest Kuelz had had in the land was lost to him and gained by Lemberg on the date Lemberg received the sheriff's deed resulting from its mechanic's lien foreclosure.[13]

## CAN LEMBERG ASSIGN ITS INTEREST IN THE PROPERTY?

The record reflects that the land contract in issue between Westfair and Kuelz had no restriction on assignability by either of the parties. Absent such a restrictive provision, the interests of the parties to such a land contract are assignable.[14] The assignment of the interest of Kuelz in the subject property is not one of voluntariness in this instance but is one of operation of law.[15] We surmise that if there was a non-assignability provision incorporated in the Westfair/Kuelz land contract that Lemberg, since it obtained only Kuelz's equitable interest in the land, could not have assigned its interest in the subject land to the McIntoshes. Courts look with favor on such non-assignability provisions because of the need to protect the security interests of the vendor/seller (Westfair here) in the property subject to the land contract.[16] Here, since there is no restriction in the assignability of the land contract, and since Lemberg is

[12] Sec. 289.01(2)(d) and (3), Stats.
[13] Sec. 289.12, Stats.
[14] *Coraci v. Noack*, 61 Wis.2d 183, 187–88, 212 N.W.2d 164, 166 (1973).
[15] Secs. 289.01 through 289.12, Stats.
[16] *Coraci*, n. 14 *supra* at 188, 212 N.W.2d at 167.

the owner of the land contract vendee/purchaser's (Kuelz's) equitable interest in the land, it was proper to assign that interest to McIntosh.

The Westfair strict foreclosure remedy is to secure payment in full of the terms of the land contract. When it receives payment in full as here, before the equity of redemption period is over, Westfair has only one obligation and that is to tender a warranty deed.

When vendor/sellers, such as Westfair, refuse the obligation of tendering a warranty deed upon receipt of the amount of the equity of redemption, courts of equity have ruled that an assignee of the purchaser of the land contract may commence an action of strict performance under the land contract, even if there is a non-assignability clause in the original land contract, because the sole purpose of the non-assignability clause was to secure the vendor/seller its full return on the land contract.[17]

The trial court was correct in determining that Lemberg had obtained the equitable interest of Kuelz in the subject property. It was correct in allowing the assignment of Lemberg's interest to the McIntoshes to stand, on the McIntoshes' motion to intervene. The trial court was correct in granting the intervening McIntoshes' judgment ordering Westfair to tender a warranty deed on their counterclaim demanding strict performance of the contract because Westfair was entitled to the amount due on the equity of redemption.

*By the Court.*—Judgment affirmed.

[17] *Coraci,* n. 14 *supra* at 189, 212 N.W.2d at 167.