W.R. MILBRANDT and Mary J. Milbrandt,
Plaintiffs-Appellants,

v.

John D. HUBER, Defendant,

Martin J. GREENBERG, Lawrence P. Wolf, Perry
P. Cohn, Broadmoor Associates, Marine Bank
National Association, Hopkins Savings & Loan
and US Life Title Company of New York,
Defendants-Respondents.†

Court of Appeals

*No. 88-0534. Submitted on briefs December 6, 1988.—Decided
February 21, 1989.*

(Also reported in 440 N.W.2d 807.)

† Petition to review denied.

277

For the plaintiffs-appellants the cause was submitted on the briefs of *Paul Piaskoski,* of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Phil Elliott, Jr.,* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

MOSER, P.J. W.R. and Mary J. Milbrandt (the Milbrandts) appeal from a summary judgment granted in favor of Martin J. Greenberg (Greenberg), Lawrence P. Wolf (Wolf), Perry P. Cohn (Cohn), Broadmoor Associates (Broadmoor), Marine Bank National Association (Marine), and US Life Title Company of New York (US Title). John D. Huber (Huber) and Hopkins Savings & Loan (Hopkins) were also named as defendants in the suit. However, Huber was not granted summary judgment because he did not appear on his behalf and was thus adjudged in default. Also, the summary judgment did not involve Hopkins. Upon our review of the pleadings, briefs, affidavits, supporting materials and oral arguments, we conclude that: (1) Huber assigned a mortgage interest in certain property to the Milbrandts, and that interest was not extinguished by a judgment of foreclosure granted to Bette Ann Mathes (Mathes) which was subsequently redeemed by Huber; and (2) material issues of fact exist as to a title insurance policy commitment, but not as to an alleged insurance contract. We therefore affirm in part, reverse in part and remand for proceedings consistent with this opinion.

This case stems from a grand scale property fraud initiated by Huber against the Milbrandts. The story begins on July 31, 1980, when Huber obtained an assignment of the purchasers' interest in a land contract involving a twenty-unit apartment building in Milwaukee. By means of a conveyance, Huber obtained said interest from Mathes, the land contract vendor and fee holder, for $277,369.16. The conveyance was recorded on August 18, 1980. In short, Huber received the interest previously held by Creative Associates, an investment firm which received the interest from Reidel Realty Service. On April 18, 1981, Huber sold his

vendee's interest in the property to Edward E. McNutt, Jr. (McNutt) by land contract for $434,000. On January 21, 1982, McNutt conveyed his land contract interest back to Huber via quit claim deed.

Huber entered into an agreement with the Milbrandts on March 31, 1980, whereby Huber purchased the Milbrandts' six-unit apartment building for $155,000. Huber was to provide the Milbrandts with $50,000 cash and a mortgage note of $105,000, which was secured by an assignment of his interest in the twenty-unit building. Huber was also to provide the Milbrandts with a mortgage title policy to insure their security interest in the twenty-unit property. The transaction was completed on April 24, 1981. The document which assigned Huber's interest in the property to the Milbrandts stated "this Assignment is given for collateral purposes only ...," and "[t]his assignment is to have the same effect as a mortgage. In the event of default on the part of the Assignor ..., the Assignee's remedy shall be a foreclosure as if it held a mortgage."

Prior to closing, the Milbrandts were presented with a "Commitment for Title Insurance" by Dennis J. Budny (Budny), agent for US Title. Section 2 of Schedule A of the commitment provided that:

> 2. The estate or interest in the land described or referred to in this Commitment and covered herein is a fee simple, and title thereto is at the effective date hereof vested:
>
> JOHN D. HUBER, Vendor's Interest and EDWARD E. MCNUTT, JR., Vendee's Interest.

Schedule B listed "special exceptions," which included:

d) Land Contract entered into by and between Bette Ann Mathes, a/k/a Betty Ann Mathes Vendor and Riedel Realty Service, Inc., a Wisconsin Corporation, Vendee, dated May 13, 1977 and recorded on June 10, 1977 in Reel 1022, Image 1211, as Document No. 5108955.

e) Vendee's Interest in the above-described Land Contract was assigned to John W. Toutenhoofd, Stanley E. Timm, John W. Herrem, Donald R. Riggenbach and T. Leonel Jaimes, a partnership, d/b/a Creative Associates, dated May 13, 1977 and recorded on June 10, 1977 in Reel 1022, Image 1215, as Document No. 5108956.

Vendee's Interest in the above-described Land Contract was further assigned by John Toutenhoofd, Stanley E. Timm, John W. Herrem, Donald R. Riggenbach and T. Leonel Jaimes to John D. Huber by an instrument dated July 31, 1980 and recorded on August 13, 1980 in Reel 1314, Image 1424, as Document No. 5416719.

f) Terms, provisions and conditions contained in Land Contract by and between John D. Huber, Vendor, and Edward E. Mcnutt, [sic] Jr., Vendee, dated December 1, 1980 and recorded on April 13, 1981 as Document No. 5468592.

g) Mortgage from Walter Nowicki, Inc., Walter A. Nowicki, President and individually, and John Gumina, Secretary, to Republic Savings and Loan Association of Wisconsin, for $236,000.00 dated March 30, 1976 and recorded on April 6, 1978 in Reel 918, Image 1870, as Document No. 4991572.

h) Mortgage from John D. Huber to Creative Associates, a partnership, for $20,000.00, dated August 1, 1980 and recorded on August 13, 1980 in Reel 1314, Image 1425, as Document No. 5416720. Satisfied. Will have satisfaction prior to closing.

Exceptions d) through h) were listed two pages after the above noted section 2 of Schedule A.

The commitment also provided that:

> It is stipulated that the policy, when issued, will cover the interest of the vendee under the land contract described in Schedule B hereof, and the policy will cover and guarantee against any loss and damage which the assured may sustain, not exceeding the face amount of the policy, by reason of defects in the title of the vendee under the said land contract, to the fee of the real estate covered thereby. The policy will not, however, guarantee anything with respect to the amount that has been paid upon said land contract at the date of the policy or the amount that will remain unpaid thereon at said date, and will be subject to the provisions of Schedule B of the policy, which schedule will contain all matters set out above which have not been eliminated prior to the issuance of the policy.

The Milbrandts assumed that Huber had paid the premium necessary to instate the terms of the proposed title insurance policy. US Title records show no evidence that a premium payment was received. No policy was issued to the Milbrandts. We also note that Budny was convicted of embezzling premium payments from US Title.

In March of 1982, Mathes commenced a foreclosure action against Huber, McNutt and the Milbrandts, because Huber defaulted under his land contract agreement with Mathes. Apparently, when approached by the Milbrandts regarding their involvement in the foreclosure, Huber responded that he had cured the default, and that the foreclosure action would be dismissed. Huber continued to make payments on his mortgage note to the Milbrandts until July 1, 1984.

This activity and his verbal reassurances led the Milbrandts to believe that their interests in the property were protected. They did not suspect that the foreclosure had proceeded, and that they were in default of it.

The circuit court rendered a foreclosure judgment in favor of Mathes on August 17, 1982, and it was recorded on January 28, 1983. Default judgment was entered against McNutt and the Milbrandts, terminating their interest in the property, and summary judgment was entered against Huber with the right to redeem within one year thereafter. Huber was granted an extension, and redeemed the property from foreclosure judgment on August 11, 1983. Huber received a warranty deed conveying fee title in satisfaction of his land contract obligation to Mathes. The warranty deed was recorded on September 21, 1983. It is uncontested that Greenberg, an attorney and a real estate partner of Huber, provided Huber with the funds necessary to redeem his interest in the twenty-unit building.

On September 13, 1983, Huber conveyed the property by warranty deed to Greenberg and Eric Butlein (Butlein), d/b/a E & M Investment Associates. On November 18, 1983, the property was conveyed back to Huber, and then Huber reconveyed the property to Greenberg, Wolf and Cohn. On November 22, 1983, Greenberg, Wolf and Cohn mortgaged the property to Marine for $350,000. On September 5, 1984, the three gentlemen conveyed the property by warranty deed to Broadmoor, a Wisconsin partnership. Greenberg, Wolf and Cohn did business as Broadmoor. On that same day, Broadmoor mortgaged the property to Marine for $453,000, and on November 14, 1984, Broadmoor mortgaged it to Hopkins for an unknown amount. Greenberg knew of the Milbrandts' involvement with the property,

but alleged that US Title advised Greenberg and Marine that the Milbrandts' interests were no longer valid after the foreclosure.

Huber defaulted under his mortgage note to the Milbrandts in July 1984, and each month thereafter, and by his failure to pay the note in full on April 24, according to its terms. The Milbrandts demanded the entire indebtedness from Huber, who refused to pay the sum. The Milbrandts' mortgage note and security interest were thus never paid in full.

The Milbrandts commenced suit, and filed a summons and complaint on February 20, 1986. The Milbrandts alleged that Huber was guilty of fraud and misrepresentation, and that Huber and Greenberg conspired to redeem the property after the foreclosure judgment, in the hopes of obtaining clear title to the property. The Milbrandts argued that any other interests in the property were subordinate to theirs, and sought: (1) foreclosure and sale of the property, with the proceeds used to pay Huber's debt to them; (2) amounts due from Huber; and (3) to bar any other party's claim, right or equity of redemption in the property.

The Milbrandts' amended complaint named as a defendant US Title, and alleged that it was: (1) negligent in preparing the title policy commitment; (2) in breach of contract for failing to reimburse them for their loss; (3) guilty of bad faith and unfair claim settlement practices, again for its failure to compensate them; and (4) guilty of statutory fraudulent advertising for preparing a deceptive and misleading insurance commitment.

The various answers asserted that: (1) Huber and Greenberg did not conspire and devise a plan to redeem the property free and clear of all liens; (2) the Milbrandts' interest in the property was terminated by the

foreclosure judgment granted to Mathes, and therefore they had no lien on the property or right to foreclosure; (3) no premium payment was indicated in the files of US Title for the Milbrandts' policy, no policy was issued and therefore US Title was not contractually bound by any policy to the Milbrandts; and (4) the title policy commitment accurately reflected the legal status of the apartment building, and therefore no negligence in preparation could be alleged on any inaccuracies, because no inaccuracies existed. After a review of the briefs, affidavits and oral arguments, the trial court granted partial summary judgment to Greenberg, Wolf, Cohn, Broadmoor, Marine, Hopkins and US Title, and judgment was entered on February 1, 1988. Huber never appeared in response to this action, and default proceedings were taken against him. The trial court specifically held that: (1) the foreclosure judgment granted to Mathes on August 17, 1982 terminated the Milbrandts' rights, title and interest in the property; and (2) Marine Bank was the holder of a lien upon the property as a third party for valuable consideration and without notice of any claim of the Milbrandts.

The Milbrandts appeal from the summary judgment. The issues presented to this court are: (1) whether Huber assigned a mortgage interest to the Milbrandts; (2) whether Huber's redemption of the property nullified and discharged the foreclosure judgment; (3) if the foreclosure judgment was nullified by the redemption, whether the Milbrandts' interest in the property was thereby reinstated; and (4) whether US Title was negligent, in breach of contract, or guilty of bad faith, unfair claim settlement practices or statutory fraudulent advertising. The Milbrandts seek summary judgment granting foreclosure on their lien on the

property in question, and the opportunity to proceed to discovery and trial on their claims against US Title.

## STANDARD OF REVIEW

Appellate courts are required to follow the same methodology as trial courts in reviewing motions for summary judgment.[1] The first step is to examine the pleadings and to determine whether a proper claim for relief has been stated.[2] If the answer joins issue and a prima facie case for summary judgment has been made, the inquiry then turns to whether any issues of material fact exist.[3] Summary judgment must be entered if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, if any, show there are no material issues of fact and that the moving party is entitled to judgment as a matter of law.[4] The purpose of summary judgment is to determine whether a legal dispute can be resolved without trial.[5]

## PROPERTY INTEREST ASSIGNED

In Wisconsin, "[w]here a land contract is executed the vendee/purchaser ... becomes the owner of the land in equity, by equitable conversion, while the vendor/seller ... retains legal title to secure the balance

---

[1]*Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

[2]*Id.*

[3]*Kimpton v. School Dist. of New Lisbon,* 138 Wis. 2d 226, 230, 405 N.W.2d 740, 742 (Ct. App. 1987).

[4]*Green Spring Farms,* 136 Wis. 2d at 315, 401 N.W.2d at 820.

[5]*Bulgrin v. Madison Gas & Elec. Co.,* 125 Wis. 2d 405, 407–08, 373 N.W.2d 47, 49 (Ct. App. 1985).

due on the purchase price."[6] The relationship between vendor and vendee in a land contract is analogous to that of equitable mortgagor and mortgagee; the mortgagor has an equity of redemption, the mortgagee the correlative right of foreclosure.[7] Furthermore, absent a contractual restriction of assignability, the interests of the vendee of a land contract are assignable.[8] The vendee in an ordinary land contract, with the right of possession, is to be regarded as the equitable owner.[9] Also, the interest of a vendee in a contract for the sale of real estate may be assigned as security for the payment of money, and the assignee in such a case takes the interest of a mortgagee who acquires an equitable lien in the property.[10]

In the case at hand, Huber was a vendee in a land contract for the twenty-unit apartment building, with Mathes as his vendor. Huber assigned his interest in the building to the Milbrandts to secure his $105,000 mortgage note. Furthermore, the document which assigned Huber's interest clearly states "[t]his assignment is to have the same effect as a mortgage. In the event of default on the part of [Huber] ..., the [Milbrandts'] remedy shall be a foreclosure as if [they] held a mortgage." Thus, we conclude that upon Huber's default on the mortgage note, the Milbrandts held a mortgage interest in the twenty-unit apartment building and accordingly had the right to foreclosure or to place a lien upon it to protect their interest. However, a

[6]*Westfair Corp. v. Kuelz,* 90 Wis. 2d 631, 636, 280 N.W.2d 364, 367 (Ct. App. 1979) (footnote omitted).

[7]*Button v. Schroyer,* 5 Wis. 598, 599 (1855).

[8]*Westfair,* 90 Wis. 2d at 639, 280 N.W.2d at 368.

[9]*See Martin v. Scofield,* 41 Wis. 167, 171 (1876).

[10]*Brayton v. Jones,* 5 Wis. 117, 123–24 (1856).

discussion of the Milbrandts' interest in the property would not be complete without considering the effect of the foreclosure judgment obtained by Mathes, and Huber's subsequent redemption of the property.

## EFFECT OF FORECLOSURE AND REDEMPTION

> A judgment on foreclosure does little more than determine that the mortgagor is in default, the amount of principal and interest due and unpaid, the amount due the plaintiff mortgagee for taxes, etc., which he has been compelled to pay and which he is entitled to have added to the amount of principal and interest, and to determine the amount of the attorney's fee. The judgment does not destroy the lien of the mortgage but rather judicially determines the amount thereof.[11]

Furthermore, "a mortgage gives rise to a lien only which persists until the equity of redemption is extinguished in the manner provided by law."[12]

An action for strict foreclosure of a land contract is an action in equity.[13] A foreclosure judgment triggers a redemptive period, wherein the vendee may redeem his interest in the property by full payment of the balance of the contractual sum.[14] The period of redemption is

[11]*Marshall & Ilsley Bank v. Greene,* 227 Wis. 155, 164, 278 N.W. 425, 429 (1938). *See also Westfair,* 90 Wis. 2d at 637–38, 280 N.W.2d at 367.

[12]*Greene,* 227 Wis. at 166, 278 N.W. at 429.

[13]*Coraci v. Noack,* 61 Wis. 2d 183, 189–90, 212 N.W.2d 164, 167 (1973).

[14]*Kallenbach v. Lake Publications, Inc.,* 30 Wis. 2d 647, 655, 142 N.W.2d 212, 216 (1966).

within the sound discretion of the trial court.[15] Finally, it has long been held that when a party acquires title to property after he assigned his original interest in the property to another, that party holds the assigned interest of the other in trust.[16]

Based on the above, we conclude that when Huber redeemed the property from Mathes and obtained fee title, any interest of the Milbrandts was reinstated because the judgment of foreclosure was thus made null and void. We also agree with the appellants, in that to hold otherwise would violate public policy and promote fraud. A vendee cannot assign his interest in property to others as security for loans, only to extinguish their assigned interest by permitting foreclosure of the property and subsequently redeeming it. We therefore conclude that the trial court was in error for determining that the Milbrandts' interest in the twenty-unit building was extinguished by the judgment of foreclosure granted to Mathes.

## VALIDITY AND ENFORCEABILITY OF THE TITLE INSURANCE COMMITMENT AND POLICY

The Milbrandts argue that summary judgment should not have been granted to US Title because material facts were at issue. They claim that the title policy commitment prepared by US Title was prepared negligently, deceptive and misleading, and thus in violation of sec. 100.18, Stats. They claim that they relied on the commitment in their decision to accept Huber's mortgage note and assignment of interest in

---

[15]*Id.* at 657, 142 N.W.2d at 217.
[16]*See Herren v. Strong*, 62 Wis. 223, 22 N.W. 408 (1885).

the twenty-unit apartment building. Furthermore, the Milbrandts allege that they had entered into a title insurance contract with US Title, and that US Title breached that contract by acting in bad faith and engaging in unfair settlement practices in violation of the contractual terms.

Interpretation of an insurance contract involves a question of law.[17] An appellate court decides questions of law independently, without deference to the decision of the trial court.[18] When construing an insurance contract, an objective test is applied.[19] The objective test requires that the policy be construed as it would be understood by a reasonable person in the position of the insured.[20]

We conclude that the terms of the title insurance commitment, as partially reproduced above, may be construed by a reasonable person to be deceptive and misleading. Section 2 of Schedule A does not clearly indicate that Mathes held fee title in the property. In fact, it appears to indicate that Huber held fee title. Furthermore, the status of each of the interests noted in the "special exceptions" section was not clearly delineated, even if the existence of those interests was accurately identified. In any event, whether or not the commitment was deceptive or misleading, and thus negligently prepared, is a question of fact which must

[17]*Shelley v. Moir,* 138 Wis. 2d 218, 222, 405 N.W.2d 737, 739 (Ct. App. 1987).

[18]*Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

[19]*Reserve Life Ins. Co. v. La Follette,* 108 Wis. 2d 637, 645, 323 N.W.2d 173, 176 (Ct. App. 1982).

[20]*Id.* at 645, 323 N.W.2d at 176–77.

be determined by a trier of fact.[21] We thus conclude that summary judgment was improperly granted to US Title on the claims related to the title policy commitment, and we therefore reverse and remand for further proceedings. However, summary judgment was properly granted to US Title on the claims involving the title policy itself.

In summary judgment actions, the inferences drawn from the underlying facts contained in the moving materials must be viewed in the light most favorable to the party opposing the motion for summary judgment, but the moving party must demonstrate a right to judgment with such clarity as to leave no room for controversy.[22] All of appellants' claims of contract violations are premised on the fact that they had an insurance contract with US Title. However, no evidence exists in the record which supports this fact. Appellants allege that an insurance premium was sent to US Title, that it was embezzled by Budny, thus explaining the lack of an entry in US Title records reflecting receipt of the premium, and that they thus had a constructive insurance contract with US Title. However, even if Budny had embezzled the premium as part of a fraud on the Milbrandts, the Milbrandts have failed to provide any evidence whatsoever that a premium was in fact paid. They provide no ledger entry, no cancelled check, and no evidence of any extension of credit to Huber. Without evidence of a premium payment, whether or not it was received by US Title, appellants cannot claim that they entered into an insurance

[21]*Cf. Tim Torres Enters., Inc. v. Linscott,* 142 Wis. 2d 56, 64–75, 416 N.W.2d 670, 673–77 (Ct. App. 1987).

[22]*Kraemer Bros., Inc. v. U.S. Fire Ins. Co.,* 89 Wis. 2d 555, 566, 278 N.W.2d 857, 862 (1979).

contract with the company. Thus, appellants fail to support their assertion of a material issue of fact, and their claims related to the existence of an insurance contract must fail.[23]

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded for proceedings consistent with this opinion.

---

[23]*See* sec. 802.08, Stats.