S.J.D., Plaintiff-Appellant,

v.

MENTOR CORPORATION, The St. Paul Companies, Inc., ABC Insurance Company and Central Life Assurance Co., Defendants-Respondents,†

WAUKESHA MEMORIAL HOSPITAL, Defendant.

Court of Appeals

*No. 90-0739. Submitted on briefs October 8, 1990.—Decided November 21, 1990.*

(Also reported in 463 N.W.2d 873.)

† Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James R. Eilman* of *Eilman and Sakar* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Trevor J. Will* and *Michael P. Van Alstine* of *Foley and Lardner* of Milwaukee.

Before Nettesheim, P.J., Brown and Scott, JJ.

NETTESHEIM, P.J.   S.J.D. appeals from a summary judgment dismissing his claim for negligent manufacture of a prosthetic device on the grounds that the claim was barred by the three-year statute of limitations set forth in sec. 893.54, Stats. The sole issue on appeal is whether S.J.D.'s cause of action accrued when a doctor advised him to have the device surgically removed or, some sixty days later, when the same doctor inspected the device during surgery. Based on our review of the record in this case, we determine that there are no material facts in dispute and that the trial court erred in determining that the statute of limitations began to run as of the earlier date. Because we conclude that the claim was timely commenced, we reverse and direct that the cause be reinstated.

S.J.D. had an inflatable penile prosthesis implanted by Dr. James Rasmussen in March of 1985 to counteract impotence brought on by diabetes. The prosthesis was manufactured by Mentor Corporation (Mentor). In April of 1986, S.J.D. began experiencing pain in his lower abdomen, near the site of the implant surgery. About the same time, S.J.D. noted that the implant had failed completely. On April 6, 1986, S.J.D. was examined by Dr. Stuart Fine, as Dr. Rasmussen was on vacation at the time. Dr. Fine confirmed that the prosthesis was not functioning properly. He also determined that S.J.D. had a hernia, which may or may not have been related to the prosthetic failure.

Dr. Fine advised S.J.D. to undergo surgery to correct the hernia, to check the Mentor prosthesis, and, if

263

necessary, to remove and replace the device. Dr. Fine indicated that if replacement was necessary, he would implant a device made by a different manufacturer, due to what he termed the "problems that he had known about with [the Mentor device]." Dr. Fine told S.J.D. that the only way he could determine what might be wrong with the device was to operate and examine the device.

Two days later, S.J.D. gave Dr. Fine permission to operate. However, Dr. Fine was not able to immediately operate because S.J.D. had difficulty obtaining approval from his insurer. The surgery was performed on June 11, 1986; Dr. Fine found that the Mentor prosthesis had broken apart into pieces which were, in turn, causing damage to surrounding tissues.

S.J.D. filed his complaint on June 9, 1989. Mentor moved for summary judgment, arguing that S.J.D.'s cause of action expired on April 6, 1989—three years from the date Dr. Fine told S.J.D. that his prosthesis had indeed failed and that corrective surgery was indicated. S.J.D. disagreed, asserting that the cause of action accrued some sixty days later, in June of 1986, when, during the course of the operation, Dr. Fine discovered that the prosthesis had broken apart.

The trial court directed summary judgment in favor of Mentor, reasoning that the statute of limitations began to run from the time Dr. Fine told S.J.D. that the prosthesis had failed and would perhaps need to be replaced. The trial court concluded that Dr. Fine's observation of a possible connection between S.J.D.'s pain and Mentor's product triggered the running of the statute of limitations. We conclude that the law required more. Therefore, we reverse.

A summary judgment motion presents a question of law which we review *de novo* and we are not required to give deference to the trial court's ruling. *See Jenson v. Employers Mut. Cas. Co.,* 154 Wis. 2d 313, 316, 453 N.W.2d 165, 166 (Ct. App. 1990). Appellate courts follow the same methodology as trial courts when reviewing the trial court's summary judgment determination. *Milbrandt v. Huber,* 149 Wis. 2d 275, 287, 440 N.W.2d 807, 811 (Ct. App. 1989). We will not repeat this oft-stated methodology here, *see Preloznik v. City of Madison,* 113 Wis. 2d 112, 116, 334 N.W.2d 580, 582–83 (Ct. App. 1983), except to say that this methodology includes an inquiry as to whether there are any material issues of fact. and whether the moving party is entitled to judgment as a matter of law. *Milbrandt,* 149 Wis. 2d at 287, 440 N.W.2d at 811.

We have examined the summary judgment record in this case from this perspective. The issue before us hinges upon the effect we give to Dr. Fine's advice to S.J.D. on April 6, 1986. Although the parties hotly dispute whether this event triggered the running of the statute of limitations, the *evidence* and the reasonable inferences to be drawn therefrom about this critical event are not in dispute. Thus, we are satisfied that the question is one appropriate for summary judgment.

We begin by reviewing some fundamental principles of statute of limitations law. Wisconsin adheres to the so-called "discovery rule" for the accrual of a cause of action in tort. *Hansen v. A.H. Robins Co., Inc.,* 113 Wis. 2d 550, 560, 335 N.W.2d 578, 583 (1983). The discovery rule represents a response to the equities inherent in circumstances where negligence and a resulting injury do not occur simultaneously. Under the discovery rule, the statute of limitations begins to run when the potential

plaintiff discovers the injury, or in the exercise of due diligence should have discovered the injury. *Id.*

The supreme court added a further refinement to the discovery rule in *Borello v. U.S. Oil Co.,* 130 Wis. 2d 397, 388 N.W.2d 140 (1986). There, the court held that discovery embraces two distinct concepts: a cause of action cannot be said to accrue until the claimant discovers both the nature of his or her injury and its cause—or at least a relationship between the event and injury. *Id.* at 406–07, 388 N.W.2d at 144. Moreover, the relationship between the injury and its cause must be more than a layperson's hunch or belief. *Id.* at 412, 388 N.W.2d at 146.

In *Borello,* the plaintiff journeyed to several doctors over a period of years, trying to discover the likely cause of her headaches, dizziness and respiratory distress. Borello had long suspected her furnace as the likely culprit, for her troubles began shortly after its installation, and worsened with each successive episode in which it would emit a strange reddish dust and foul-smelling fumes. Still, the many doctors Borello consulted diagnosed her as having conditions ranging from allergies to heart disease to psychoneurosis. Finally, a specialist in occupational medicine correctly determined that Borello had a condition known as metal fume fever, caused by her malfunctioning furnace. Unlike the other doctors, the specialist was able to offer Borello objective proof that her hunch was correct: he ordered laboratory analysis of particles spewed by her furnace.

U.S. Oil Company, who installed the furnace, claimed the statute of limitations began to run with Borello's own subjective belief that the furnace was causing her medical condition and not with the correct diagnosis some years later. The supreme court held that Borello's cause of action accrued at the time of the cor-

rect diagnosis. *Id.* at 414–15, 388 N.W.2d at 147. The court reasoned that a hunch or belief that is not presently supportable does not constitute the kind of knowledge that charges a possible plaintiff with the immediate duty to commence an action. *Id.* at 413 n.5, 388 N.W.2d at 146. Because Borello was in no position to confirm her own suspicions regarding the nature of her injuries, she did not have the "objective belief" to a reasonable degree of certainty that U.S. Oil Company caused her injury. *See id.* at 403 and 411–14, 388 N.W.2d at 142 and 146–47.[1]

Thus, *Borello,* strikes a sensible balance between the respective interests of claimants and potential defendants. On the one hand, a claimant is not required to take legal action against a host of unwitting, and ultimately inculpable, persons in order to preserve his or her claim against the true defendant.[2] On the other hand, the claimant is required to timely pursue the action where the known facts create reasonable certitude that the potential defendant was likely responsible for the harm. Thus, the relevant inquiry is on the strength *and* the nature of the connection between the defendant's conduct and the injury as reflected in the facts known to the claimant. We now turn to this analysis.

Dr. Fine's remarks to S.J.D. in April 1986 lie at the center of the present controversy. S.J.D. argues that Dr. Fine's statements did not provide a sufficient indication

[1]We have applied the same analysis in cases where uncertainty about the identity of the party to be sued is present. *Spitler v. Dean,* 143 Wis. 2d 820, 824, 422 N.W.2d 879, 881 (Ct. App. 1988).

[2]The claimant who pursues a frivolous claim is subject to sanctions, as is the claimant's attorney. *See* secs. 814.025 and 802.05, Stats.

under *Borello* that his injuries were caused by the Mentor prosthesis. In support, S.J.D. points to Dr. Fine's advice to him that surgery was "the only way to determine exactly what, if anything, was wrong."[3]

Mentor argues, however, that Dr. Fine's additional statement that the device had failed and would have to be replaced, coupled with his suggestion that the replacement not be a Mentor model, constituted sufficient information to start the running of the statute of limitations.

We reject Mentor's argument. Prior to his June 11, 1986 surgery, S.J.D. was left in much the same state as Borello prior to her session with the occupational medicine specialist who, for the first time, confirmed Borello's suspicion that her injury was related to the furnace. Both S.J.D. and Borello suspected that a defective product caused the injury. Neither knew with reasonable certitude. Both had to await further diagnosis or evaluation for confirmation of their suspicions. The reasonableness of S.J.D.'s uncertainty is corroborated by Dr. Fine's unvoiced suspicions that other possible causes existed for S.J.D.'s discomfort. These included improper original implantation, physical trauma to the lower abdomen, or some combination of all the possibilities. If Dr. Fine could not establish with reasonable certainty the likely cause of S.J.D.'s injury prior to surgery, we can hardly hold S.J.D., a layperson, to such a standard.

Adoption of Mentor's arguments places S.J.D. in an untenable position. To protect his cause of action, S.J.D. would have been forced to ignore the plain meaning of Dr. Fine's advice, to wit, surgery was necessary to establish what, *if anything*, was wrong with the Mentor device. Far from suggesting a reasonable cause for

---

[3]This statement is contained in Dr. Fine's affidavit.

S.J.D.'s discomfort, Dr. Fine's statement makes any talk of cause premature.[4]

Dr. Fine's additional remarks about his reservations regarding the Mentor model do not alter our thinking on this question. These remarks do not neutralize the plain meaning of the "I'll-have-to-operate-to-see" statement; at most they provide S.J.D. with conflicting, and therefore equivocal, information. Nor does Dr. Fine's further remark to S.J.D. that Mentor prostheses often failed due to leakage of hydraulic fluid alter our conclusion. This remark does not establish reasonable certainty that Mentor had been negligent in relation to *S.J.D.'s* prosthesis.

By this we do not suggest (nor does Mentor argue) that the statute will begin to run only when a claimant has absolute certainty regarding the viability of a cause of action against a given defendant. We do conclude under *Borello* that the statute is triggered when *the claimant* has an *objective* basis for determining that the defendant had a role in causing his or her injuries. The results of the exploratory surgery on June 11, 1986 provided S.J.D. with this objective basis. *In this situation,* everything short of the operation was in the nature of educated guesswork.

We therefore conclude that S.J.D.'s cause of action did not accrue until the date of the explantation surgery—June 11, 1986—and that this action was timely commenced. Accordingly, the judgment of the trial court

[4]Thus, this case is different from *Fritz v. McGrath,* 146 Wis. 2d 681, 431 N.W.2d 751 (Ct. App. 1988), where a dentist discussed with the plaintiff his "impression" that the injury was related to the earlier dental surgery. *Id.* at 688, 431 N.W.2d at 754–55.

is reversed, and the cause remanded for further proceedings.

*By the Court.*—Judgment reversed and cause remanded.