REPUBLIC BANK OF CHICAGO,
Plaintiff-Appellant,

v.

Jozef LICHOSYT a/k/a Joseph Lichosyt and Julia
Jakubow, Trustee of the Julia Jakubow Living
Trust, Defendants-Respondents,

VILLAGE OF LAKE DELTON
and Sauk County, Defendants.
[Case No. 2006AP1578.]

Julia JAKUBOW, Plaintiff-Respondent,

v.

Joseph LICHOSYT a/k/a Jozef Lichosyt,
Defendant-Respondent,

REPUBLIC BANK OF CHICAGO,
Defendant-Appellant.
[Case No. 2006AP1579.]

Court of Appeals

*Nos. 2006AP1578, 2006AP1579. Submitted on briefs
January 23, 2007.—Decided May 17, 2007.*

2007 WI App 150

(Also reported in 736 N.W.2d 153.)

474

On behalf of the plaintiff-appellant and defendant-appellant, the cause was submitted on the briefs of *Michael S. Polsky* and *Dorothy H. Dey* of *Beck, Chaet & Bamberger, S.C.*, Milwaukee.

On behalf of the defendants-respondents and plaintiff-respondent, the cause was submitted on the brief of *Gregory J. Fumelle* of *Krueger & Hernandez S.C.*, Madison.

Before Lundsten, P.J., Dykman and Vergeront, JJ.

¶ 1. VERGERONT, J. This appeal concerns the relationship between two actions that affect the interests of a judgment lienholder, a land contract vendor, and a land contract vendee. In one action the judgment lienholder, the Republic Bank of Chicago, seeks a foreclosure and sale of the judgment debtor's interest as a land contract vendee; in the other action, the land contract vendor seeks strict foreclosure of the land contract. Although the Bank's action was filed first, the circuit court permitted the strict foreclosure action to continue and granted a judgment of strict foreclosure; it then dismissed the Bank's action. The Bank appeals both the strict foreclosure judgment and the order dismissing its action, and we have consolidated the appeals.

¶ 2. We affirm the circuit court's judgment of strict foreclosure and its order dismissing the Bank's action for foreclosure and sale. We conclude: (1) the circuit court did not err in declining to dismiss the strict foreclosure action because of the Bank's action; (2) the circuit court properly exercised its discretion in declining to dismiss the strict foreclosure action because of the no-transfer order entered in the Bank's action; (3) the land contract vendee's quitclaim deed to the land contract vendor did not require dismissal of the strict foreclosure action; (4) WIS. STAT. § 846.30 (2005–06)[1] does not prevent a land contract vendee from waiving

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

the right to redemption in a strict foreclosure action; and (5) the circuit court correctly decided it did not have the discretion under existing case law to grant the Bank a redemption period in the strict foreclosure action.

## BACKGROUND

¶ 3. In February 2002, Jozef Lichosyt entered into a land contract with Julia Jakubow, as trustee of the Julia Jakubow Living Trust (Jakubow),[2] for the purchase of property in Wisconsin Dells, Sauk County, that contained a motel, inn, restaurant, and cocktail lounge (the property). The total purchase price was $4,350,000, with $350,000 to be paid upon the execution of the contract and the remainder, with interest, to be paid in installments over the next seven years. The contract was recorded in the office of the Sauk County Register of Deeds in March 2002.

¶ 4. In November 2004, the Bank filed and docketed in the Sauk County circuit court a judgment against Lichosyt for $1,331,082.05 that had been entered in favor of the Bank in a proceeding in the State of Illinois. The Bank then filed an action in Sauk County circuit court seeking a judgment of foreclosure and sale of the property and distribution of the proceeds (the Bank's action). The complaint alleged that by virtue of the docketed judgment, the Bank held a judgment lien on the property. The complaint named as

---

[2] Julia Jakubow, as trustee, subsequently assigned the vendor's interest in the land contract to Jakubow, LLC. For purposes of this appeal it is unnecessary to distinguish between Jakubow as trustee and Jakubow, LLC, and we therefore simply use the name "Jakubow."

defendants Jakubow, as land contract vendor, and municipalities who might have an interest because of delinquent taxes.

¶ 5. Lichosyt and Jakubow both filed answers to the complaint. Jakubow's answer asserted that its land contract vendor's lien was superior to any judgment lien held by the Bank and asked either for dismissal of the complaint or, in the event of foreclosure, a determination of the land contract vendor's first lien priority. The Bank moved for appointment of a receiver on the ground that Lichosyt was committing waste because he was collecting income from the property, but was not applying it to the delinquent taxes or the Bank's judgment against Lichosyt.[3]

¶ 6. A day before the hearing on the receivership motion, Jakubow filed a complaint for strict foreclosure in the Sauk County circuit court naming both Lichosyt and the Bank as defendants (the Jakubow action). The complaint alleged that Lichosyt was in default under the land contract and asked the court to set a date by which Lichosyt was to pay all sums due under the contract; if he failed to do so, the complaint asked the court to order that Lichosyt, the Bank, and all persons claiming under them subsequent to the notice of the filing of the complaint be foreclosed from "all right, title interest and equity of redemption" in the property. This action was assigned to the judge presiding in the Bank's action.

---

[3] By this time, the Bank had obtained two additional judgments against Lichosyt in Illinois, one for $365,345.45 and one for $326,804.77, which the Bank and Lichosyt stipulated were properly docketed in Sauk County. Because it is not necessary to distinguish between the three docketed judgments for purposes of this appeal, we will refer to them collectively as "the judgment."

¶ 7. At the hearing the next day on the Bank's receivership motion in the Bank action, Lichosyt and the Bank presented to the court a stipulation and proposed order they had agreed upon regarding the appointment of a receiver; under the stipulation and proposed order, the receiver could sell the property after December 31 without Lichosyt's consent under certain conditions. Jakubow, through counsel, agreed to the stipulation "contingent on the agreement between [Jakubow and the Bank] for payment of interest pending sale of the property as specified." At the same time, Jakubow's counsel referred to the strict foreclosure action filed the previous day and "reserved the right to proceed independently" in that action. The court approved and signed the proposed order.

¶ 8. On October 14, 2005, Lichosyt filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code in the United States District Court, Northern District of Illinois. The bankruptcy court granted relief from the automatic stay imposed by 11 U.S.C. § 362 to both the Bank and Jakubow.[4]

¶ 9. After the automatic stay was lifted, Lichosyt and Jakubow entered into a stipulation for judgment in the strict foreclosure action in which Lichosyt waived any right to redemption he had, agreed that Jakubow was entitled to strict foreclosure, and agreed that the

---

[4] The automatic stay as to the Bank was based on the Bank's motion, which asserted that, according to the schedule Lichosyt had filed in the bankruptcy action, the property had a fair market value of $2,700,000 and secured claims of $6,700,000, and therefore Lichosyt and the trustee had no equity in the property. The automatic stay as to Jakubow was terminated based on a stipulation between Jakubow, Lichosyt, and the bankruptcy trustee; based on that stipulation, the court also ordered the trustee to abandon the property.

judgment could provide that "any and all persons claiming under him, shall be forever foreclosed from any right, title and interest to the land" and "title shall vest" in Jakubow. At the same time, Lichosyt executed a quitclaim deed to Jakubow that "released all [his] right, title, and interest in and to the Property . . . arising from [the] Land Contract," and executed an "Affidavit of Fair Dealing." In the affidavit, Lichosyt averred that he understood he had the right to redeem in the strict foreclosure action, but he did not want to refinance the property and he did not have the funds to eliminate the default or pay the entire land contract; he had executed the quitclaim deed voluntarily, without being pressured, and had consulted with his attorney; in his opinion the current value of the property was not in excess of the amount he owed plus the accruing taxes; and Jakubow, in accepting the deed, had agreed to cancel all his obligations under the land contract, including any deficiency.

¶ 10. In a hearing in February 2006, the court took up pending motions regarding the receiver in the Bank's action[5] and the impact of the stipulation for judgment in the strict foreclosure action. Jakubow's position was that the receivership should be terminated because, by virtue of the stipulation in the foreclosure action and the quitclaim deed, legal and equitable title were now merged with her; therefore, she had the right

_____

[5] In early October 2005, before Lichosyt had filed for bankruptcy, Jakubow had filed a motion to terminate the receivership in the Bank action on the grounds that the business was closed for the winter, the Bank had made no payments to her as it had agreed, she had received no payments from the receiver, and she could sell the property without the aid of the receiver. The receiver thereafter filed a motion for permission to enter into a listing contract for the sale.

to manage the property herself and to choose whether or not she wanted to sell it. The Bank's position was that the receiver should be permitted to go ahead with the sale of the property and that Lichosyt should not be allowed to frustrate the Bank's action by a stipulation and quitclaim deed in the strict foreclosure action. The Bank also argued that, while its judgment lien was junior to that of Jakubow, it had a right of redemption in the strict foreclosure action because of its lien and the pending action to foreclose its lien.[6]

---

[6] Jakubow also argued that the Bank's judgment lien would be extinguished under Wisconsin law when Lichosyt's debts were discharged in the bankruptcy action, which would occur in the near future. The Bank disagreed, contending that since the judgments were entered in Illinois, Illinois law controlled on whether they were satisfied and it was different from Wisconsin law on this point. The court did not resolve this dispute because it concluded it was premature. This issue resurfaced again in Jakubow's motion in this court to supplement the record and to dismiss this appeal on the ground that it was moot because the judgment had been satisfied by orders entered in Sauk County circuit court, based on the bankruptcy discharge. The Bank objected to both requests, asserting that it was in the process of seeking relief from those orders. We denied Jakubow's motion because we concluded this appeal was not moot at the time and there was no reason to supplement the record. The Bank's appeal of the orders for satisfaction of judgment are now pending in this court, case nos. 2006AP2958, 2006AP2959, and 2006AP2960.

The Bank and Jakubow also disputed the fair market value of the property. The broker retained by the receiver asked to list the property at $6.9 million, based on an appraisal of $6,668,000. Jakubow contended that the Bank's current position on the value of the property was in direct conflict with the Bank's motion for a stay in the bankruptcy court because that motion had accepted the scheduled value of $2.7 million. Had the Bank asserted in the bankruptcy court that the property had the value the broker was estimating, Jakubow argued, the bankruptcy court would not have lifted the stay for the Bank.

¶ 11. The court issued a decision in the Bank's action in which it concluded that the execution of the quitclaim deed granted all of Lichosyt's interest in the property to Jakubow, but had no effect on the Bank's judgment lien or on the Bank's foreclosure action; similarly, the stipulation and Lichosyt's waiver of the right of redemption did not affect the Bank's judgment lien rights because it was a party in the strict foreclosure action and whatever rights it had continued until the court issued a decision on the merits. The court rejected the Bank's argument that it had the right in the strict foreclosure action to place itself in Lichosyt's position and exercise his right to redemption and thereby acquire the property. The court reasoned that the Bank was the holder of a judgment lien, was not a secured creditor, and its rights as a judgment lienholder were governed by statute, which does not provide such a right. The court observed that a judgment lienholder did have a statutory right to bid and purchase at a sale, but that in the common law strict foreclosure action there was no sale, and Jakubow had the right under common law to elect strict foreclosure rather than a judgment and sale. The court noted the case law cited by the Bank in which the assignee of a land contract vendee's interest had been permitted to exercise the right of redemption; but the court concluded those cases did not apply because there was no assignment to the Bank in this case.

¶ 12. The court denied the receiver's motion to list the property because Jakubow had made clear she would not consent to the sale, and the court concluded there

The circuit court expressed concern over any significant inconsistency in the representations on the value of the property and asked the parties to address this issue in briefs. However, the court ultimately did not make a ruling on this issue because it was unnecessary given its other rulings.

was no authority requiring her to consent or preventing her from electing the remedy of strict foreclosure. The court granted Jakubow's motion to terminate the receivership because now that Lichosyt had quitclaimed his interest to her and waived his right to redemption, she could operate the property to protect her own interests. The court rejected the Bank's argument that the quitclaim deed and the stipulation in the strict foreclosure action were prohibited by the provision in the receivership order enjoining Lichosyt from transferring his assets.

¶ 13. In the strict foreclosure action, Jakubow had filed a motion for summary judgment based on the undisputed facts that Lichosyt had defaulted, the land contract permitted her to seek foreclosure as a result, and Lichosyt had waived his right to redemption and quitclaimed his interest to her. The Bank opposed the motion based on its position that it had a right to a redemption period because there was substantial equity above that owed to Jakubow. The court rejected this position for the reasons it had already explained in the Bank action. The Bank also argued that Jakubow's acceptance of the quitclaim deed required dismissal of the strict foreclosure action. The court concluded that the case law cited by the Bank did not support this position and a land contract vendor who chose strict foreclosure had the right to clear title in this way. The court granted summary judgment in favor of Jakubow and entered an order strictly foreclosing the land contract. Among other provisions, the court ordered that

> any and all interest held in the real property covered by the Land Contract which is the subject matter of this action as set forth below of defendant Republic Bank of Chicago is, and shall be forever, foreclosed and cease to

exist with title vesting in the name of the plaintiff herein, Jakubow, LLC.

¶ 14. Thereafter, the circuit court dismissed the Bank's action on the ground that "any interest it held in the real property covered by the Land Contract . . . was foreclosed [in the judgment of strict foreclosure] and the title to the property vested in the name of Jakubow . . . ."

## DISCUSSION

¶ 15. The Bank asserts that the circuit court erred in not dismissing the strict foreclosure action and instead dismissing its action for these reasons: (1) the court improperly deprived the Bank of its right to execute on its judgment by foreclosure and sale; (2) Lichosyt violated the no-transfer provision in the receivership order; and (3) Jakubow's acceptance of the quitclaim deed terminated the strict foreclosure action. In addition, the Bank argues, the court erred in not setting a redemption period in the strict foreclosure action because the vendee may not waive that right and because the court erroneously concluded it lacked authority to grant the Bank the right to a redemption period.[7]

¶ 16. We begin with a summary of the applicable law on land contracts, strict foreclosure, and judgment liens, and then address each of the five arguments.

I. Applicable Law

¶ 17. Upon the execution of a land contract, the vendee acquires equitable title to the property while the vendor retains the legal title as security for the unpaid

---

[7] We have organized the issues somewhat differently than the Bank does in its brief.

balance. *Steiner v. Wisconsin Am. Mut. Ins. Co.*, 2005 WI 72, ¶ 23, 281 Wis. 2d 395, 697 N.W.2d 452. "Holding equitable title in effect gives the land contract vendee 'full rights' of ownership, including the ability to 'sell, lease or encumber the real estate subject to the rights of the Vendor unless the contract provides to the contrary.' " *Id.* (citations omitted).

¶ 18. When a land contract vendee defaults under the terms of the contract, the vendor can select from a number of remedies: sue for the unpaid purchase price; sue for specific performance in which case the property is sold at a judicial sale; declare the contract at an end and bring a quiet title action to clarify the parties' rights; or bring an action for strict foreclosure. *Kallenbach v. Lake Publications, Inc.*, 30 Wis. 2d 647, 651–52, 142 N.W.2d 212 (1966).

¶ 19. Strict foreclosure is a long-standing common law equitable remedy in Wisconsin, *Steiner*, 281 Wis. 2d 395, ¶ 25, and the one most frequently used by land contract vendors. *Kallenbach*, 30 Wis. 2d at 652. In a strict foreclosure action, "the land contract vendor forgoes his or her right to collect the amount remaining on the debt and instead recovers the property." *Steiner*, 281 Wis. 2d 395, ¶ 26. The procedure is that the court sets a "redemption period, in which the vendee must pay up or lose all his or her interest in the land." *Id.*

> [T]he purpose of a strict foreclosure action is to terminate any further right to perform the land contract on the part of the vendee because of his [or her] default and to confirm the legal title in the vendor free of any equitable ownership or claim under the contract of purchase.

488

*Id.*, ¶ 26 n.20 (quoting *Exchange Corp. of Wis. v. Kuntz*, 56 Wis. 2d 555, 559, 202 N.W.2d 393 (1972)).

¶ 20. At common law the circuit court had the discretion to decide upon the duration of the redemption period. *Id.*, ¶ 27. However, Wɪs. Sᴛᴀᴛ. § 846.30 now provides that "the court shall set a redemption period of at least 7 working days from the date of the judgment hearing or, if there is no hearing, from the date of the entry of the judgment order . . . ."[8]

¶ 21. Turning now to judgment liens, "these exist only through the operation of the Wisconsin statutes." *Megal Dev. Corp. v. Shadof*, 2005 WI 151, ¶ 48, 286 Wis. 2d 105, 705 N.W.2d 645. A judgment for the payment of money that is properly entered in the judgment and lien docket is "a lien on all real property of every person against whom the judgment is entered which is in the county where the judgment is rendered . . . ." Wɪs. Sᴛᴀᴛ. § 806.15(1); *see also* Wɪs. Sᴛᴀᴛ. § 806.10. A judgment of another state that is properly filed with the clerk of circuit court is treated in the same manner as a judgment of the circuit court in this state. Wɪs. Sᴛᴀᴛ. § 806.24(1)-(3). The procedure for executing on a judgment is established in Wɪs. Sᴛᴀᴛ. ch. 815. There is a detailed procedure for the levy of execution on the real property of the debtor, which includes a sale upon notice with a right of redemption thereafter for the debtor and other prescribed persons, and a mechanism for certain judgment and mortgage creditors to acquire the interest of the purchaser at the sale. Wɪs. Sᴛᴀᴛ. §§ 815.03–17 and Wɪs. Sᴛᴀᴛ. §§ 815.31–55.

¶ 22. The supreme court has recently described a judgment lien as "nothing more than a mechanism for the enforcement of an in personam money judgment,"

---

[8] 1995 Wis. Act 250, § 2 (effective May 3, 1996).

*Megal*, 286 Wis. 2d 105, ¶ 48, and has reaffirmed older case law holding that a judgment lien does not "constitute or create an estate, interest, or right of property in the lands which may be bound for its satisfaction . . . ." *Id.* (quoting *Musa v. Segelke & Kohlhaus Co.*, 224 Wis. 432, 435, 272 N.W.2d 657 (1937)).

II. Did the Circuit Court Err In Not Dismissing the Strict Foreclosure Action Because of the Bank's Action?

¶ 23. We first address the Bank's contention that the court improperly allowed Jakubow and Lichosyt to "circumvent" the remedy of foreclosure and sale that the Bank sought in its action. The Bank points to the fact that it had filed its action, naming Jakubow as a defendant, before Jakubow filed the strict foreclosure action; Jakubow filed the strict foreclosure action the day before the hearing on the receivership motion in the Bank's action; and then Jakubow and Lichosyt agreed to judgment in the strict foreclosure action, along with the transfer of Lichosyt's interest to Jakubow. The Bank describes these actions as a "conspiracy" and "collusion," which should have prevented Jakubow from obtaining a judgment of strict foreclosure.

¶ 24. The premise of this argument is that, because the Bank had already filed its action, it was improper of Jakubow to file a strict foreclosure action and the court should have dismissed it for that reason. We view this as a challenge to the legal standard the court employed. Whether the circuit court applied the correct legal standard is a question of law, which we review de novo.[9] *See Gallagher v. Grant-Lafayette Elec.*

---

[9] The court entered judgment in the strict foreclosure action based on Jakubow's motion for summary judgment. A

*Coop.*, 2001 WI App 276, ¶ 15, 249 Wis. 2d 115, 637 N.W.2d 80.

¶ 25. The Bank does not refer us to any provision in WIS. STAT. ch. 815 or any case law that would prevent a land contract vendor from filing a strict foreclosure action or obtaining a judgment of strict foreclosure because a judgment lienholder has already filed an action for foreclosure and sale of the property. Nor does it refer us to any statute or case law that suggests the circuit court has the discretion to dismiss a strict foreclosure action for that reason. On the other hand, case law has established that the land contract vendor may choose the remedy it wishes to pursue; it may choose strict foreclosure, which does not involve a sale, instead of a remedy that does involve a sale. *See Kallenbach*, 30 Wis. 2d at 652. We recognize that a strict foreclosure action is an equitable action. However, the equitable considerations courts have addressed, besides those concerning the vendor, have concerned the vendee, or those who have acquired the vendee's interest under the contract. *See infra* at paragraphs 43–50.

¶ 26. There may be good policy reasons why a judgment lienholder's action under WIS. STAT. ch. 815 for a foreclosure and sale of the judgment debtor's interest in a land contract should affect the ability of a

party is entitled to summary judgment if there are no disputed issues of fact and that party is entitled to judgment as a matter of law, WIS. STAT. § 802.08(2), and we review summary judgments de novo. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987). Although the Bank suggests in its standard of review section that there are disputed issues of material facts in the strict foreclosure action, it does not argue anywhere in its brief that, if the court did employ the correct legal standards, there are material issues of facts.

land contract vendor to pursue the remedy of strict foreclosure. However, we see no indication in ch. 815 that the legislature has made that policy choice. It may also be that there are good reasons to modify the common law on strict foreclosure to take into account a judgment lienholder's pending action under ch. 815. However, we view this as a significant change in the common law that, if it is to occur, should be made by the supreme court, not this court.

¶ 27. Because there is no statutory or case law that prevented Jakubow from filing or obtaining strict foreclosure on the ground the Bank had already filed its action, the circuit court did not err in deciding not to dismiss the strict foreclosure action because of the Bank's action.

III. Did the Circuit Court Err in Its Ruling on the No-Transfer Provision in the Receivership Order?

¶ 28. The Bank argues, as it did in the circuit court, that Lichosyt plainly violated the no-transfer provision in the receivership order by quitclaiming his interest to Jakubow and stipulating to a judgment of strict foreclosure. The no-transfer provision stated that Lichosyt was "enjoined and restrained from in any manner alienating or disposing of his assets, including making any assignment for the benefit of creditors."

¶ 29. The court concluded that the deed and strict foreclosure stipulation between Lichosyt and Jakubow did not violate the no-transfer provision because Jakubow was not a party to the no-transfer stipulation, she had an interest superior to that of the Bank, and she could take steps to protect her interest. In any event, the court concluded that its determination that

the receivership should be terminated mooted the issue whether that no-transfer provision in that order had been violated.

¶ 30. The Bank challenges the court's reasoning as flawed because it "presupposed" a valid judgment of strict foreclosure, which, according to the Bank, should not have been granted. The Bank appears to argue that, if Lichosyt violated the no-transfer provision, the court was required to dismiss the strict foreclosure action and permit the Bank's action to proceed.

¶ 31. Whether to sanction a party for a violation of a court order and, if so, what sanction to impose, is within the discretion of the circuit court. *See State v. A.W.O.*, 117 Wis. 2d 120, 127, 344 N.W.2d 200 (Ct. App. 1983). We defer to a court's discretionary decision if the court applied the law to the facts of record and reached a reasonable result. *Mared Indus., Inc. v. Mansfield*, 2005 WI 5, ¶ 9, 277 Wis. 2d 350, 690 N.W.2d 835. In addition, we defer to the court's construction of an order it has entered if the order is ambiguous. *See Schultz v. Schultz*, 194 Wis. 2d 799, 807–09, 535 N.W.2d 116 (Ct. App. 1995).

¶ 32. We see no erroneous exercise of discretion here. The no-transfer provision in the receivership order was a result of a stipulation between Lichosyt and the Bank before Jakubow filed the strict foreclosure action. As noted in the background section, Jakubow agreed to that stipulation, conditioned upon certain payments from the Bank. But Jakubow also made it clear that her agreement did not mean that she was giving up the right to pursue her strict foreclosure action, which she had filed the day before. The court entered the receivership order at that time without

discussing how the order might affect the strict foreclosure action. When the relationship between the receivership order, the Bank's action, and the strict foreclosure action was more fully considered, the court decided —correctly, as we have already held—that Jakubow was entitled to pursue her strict foreclosure action even though the Bank had already filed its action. Once the court arrived at that decision, it could reasonably decide that the no-transfer provision in the receivership order should not be construed to prevent Lichosyt from agreeing to a strict foreclosure. As the court correctly held, Lichosyt's quitclaim deed and stipulation to strict foreclosure did not in themselves affect the Bank's interests. The court was certainly not obligated, as a sanction against Lichosyt, to dismiss Jakubow's strict foreclosure action and allow the Bank's action to continue.

IV. Did the Quitclaim Deed Require Termination of the Strict Foreclosure Action?

¶ 33. The Bank asserts that the court erred as a matter of law in not dismissing the strict foreclosure action after Lichosyt had quitclaimed his interest to Jakubow. The Bank relies primarily on *Milwaukee Loan & Finance Co. v. Grundt*, 207 Wis. 506, 242 N.W. 131 (1932), which addresses the effect of a quitclaim deed from a land contract vendee to land contract vendors where there is no strict foreclosure action. In *Milwaukee Loan*, 207 Wis. at 508, the land contract vendee contracted with builders who filed liens when the vendee did not pay. The vendors, who did not know about the liens, accepted a quitclaim deed from the vendee, retaining what they had been paid, and releasing the vendee from further obligations. *Id.* The trial

494

court granted the construction lienholders[10] a judgment of foreclosure against the vendors' estate, concluding that the legal and equitable title had merged in the vendors by virtue of the quitclaim deed. *Id.* at 507. The supreme court reversed. It explained that, while the equitable interest transferred to the vendors "was subject to liens in favor of the respondents," *id.* at 508, and the liens were not "destroyed" by the agreement between the vendor and vendee, *id.* at 509, there was a presumption that the legal titleholder did not intend the legal and equitable title to merge. *Id.* at 508. If the titles did not merge, the lienholders could realize on their claims only to the extent of the interest the vendee had in the property at the time of the construction services; if the titles did merge, the lienholders could reach all the vendor's interest in the property.[11] *Id.* at 509; *see also Else v. Cannon*, 265 Wis. 510, 512–13, 62 N.W.2d 3 (1953) (relying on *Milwaukee Loan* on essentially the same facts).

¶ 34. The Bank argues that the record shows Jakubow intended that the legal and equitable title merge upon Lichosyt's execution of the quitclaim deed

---

[10] The court in *Milwaukee Loan & Finance Co. v. Grundt*, 207 Wis. 506, 242 N.W. 131 (1932), uses the term "mechanic's lien," but the current statute uses the term "construction lien" to describe liens resulting from improvements to real property, *see* Wis. Stat. § 779.01, and "mechanic's lien" to describe liens arising from work on personal property. *See* Wis. Stat. § 779.41. Therefore, we use the term "construction lien."

[11] The Bank equates a judgment lien to a construction lien, because, in deciding a different issue, the court in *Mueller v. Novelty Dye Works*, 273 Wis. 501, 506, 78 N.W.2d 881 (1956), stated that "a judgment duly docketed against the *vendee* becomes a lien on his interest" (emphasis in original). It is unnecessary on this appeal to discuss the distinctions between construction liens and judgment liens.

because her counsel made that statement in the context of arguing that a receiver was no longer needed. The Bank also points to Lichosyt's "Affidavit of Fair Dealing" in which he averred that the deed was intended to be "an absolute conveyance" of all of his right, title, and interest to the property. Since the legal and equitable titles merged, the Bank argues, Lichosyt no longer had an equitable interest to foreclose, and the court therefore was required to dismiss the strict foreclosure action and allow the Bank to proceed in its action against Jakubow's entire interest in the property as legal and equitable owner.

¶ 35. Like the circuit court, we conclude that *Milwaukee Loan* and *Else* do not support the Bank's position. Those cases did not involve a strict foreclosure action and there is nothing in the cases to suggest that the analysis would have been the same if the land contract vendor had filed a strict foreclosure action. Indeed, among the relevant principles summarized by the court in *Else*, 265 Wis. at 512, was: "[i]f a purchaser under a land contract has any equity when he surrenders to the vendor, the equity continues to exist after the surrender *to the extent that some other intervening attached interest is not cut off by the surrender.*" (Emphasis added.) Thus, if a strict foreclosure judgment cuts off the intervening attached interest, the analysis in these cases is not applicable. The Bank does not argue that a strict foreclosure judgment does not cut off intervening attached interests but instead appears to implicitly concede that it does.

■

¶ 36. We reject the Bank's argument that Jakubow somehow forfeited the right to obtain a strict foreclosure judgment by accepting the quitclaim deed. As a matter of law, nothing in the cases the Bank cites

supports such a conclusion. As a matter of fact, it is evident from the record that Jakubow did not view the quitclaim deed as "merging legal and equitable title" in the sense that the *Milwaukee Loan* and *Else* courts use the term—making the land contract vendor responsible for a lien filed against the vendee's property to the full extent of both the legal and equitable title. Rather, she was using the term to mean that she was now the owner of Lichosyt's equitable interest, as well as her legal interest.

¶ 37. We conclude the court did not err in deciding not to dismiss the strict foreclosure action because of the quitclaim deed.

V. May a Land Contract Vendee Waive the Right to Redemption in a Strict Foreclosure Action?

■■■

¶ 38. The Bank argues that WIS. STAT. § 846.30 requires the circuit court to set a minimum period of redemption of seven days, and the land contract vendee may not waive this requirement. We understand this argument to be separate from the Bank's contention that the court erroneously exercised its discretion in not affording it a redemption period, which we address in the next section. Here we inquire whether, assuming the land contract vendee waives the right to redemption and there is no other party who has the right to redemption, does § 846.30 require the court nonetheless to set the minimum period of redemption? We conclude it does not.

■■■

¶ 39. Statutory construction presents a question of law, which we review de novo. *Steiner*, 281 Wis. 2d 395, ¶ 8. When we construe a statute, we begin with

the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and we interpret it reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 49.

¶ 40. The Bank argues that because WIS. STAT. § 846.30 states that " . . . the court *shall* set a redemption period of at least 7 working days . . ." (emphasis added), the court must do so in every strict foreclosure action, even if the vendee waives the redemption period and no other party has a right to a redemption period. We conclude this is not a reasonable reading of the statute. As the court in *Steiner*, 281 Wis. 2d 395, ¶ 31, explained, this requirement was enacted in apparent reaction to an unpublished court of appeals decision, *Walker v. Dorney*, No. 93–2389–FT, unpublished slip op. (Wis. Ct. App. Feb. 8, 1994), that had affirmed a circuit court's strict foreclosure judgment that did not grant the vendee a period of redemption even though the vendee wanted one. The *Steiner* court referred to a letter in the legislative drafting file stating: "Were it not for the *Walker vs. Dorney* case I would not suggest legislation—I never previously considered the possibility that a judge hearing a *contested* [emphasis added] strict foreclosure action would even have the authority to issue a foreclosure judgment *without* [emphasis in the original] a redemption period." *Steiner*, 281 Wis. 2d

395, ¶ 32 (citation omitted). Thus, the minimum redemption period was enacted to prevent a court from not affording any right to redemption when the vendee, or someone else so entitled, wanted one. Neither this purpose nor the language of the statute supports requiring a period of redemption even if all parties with a right to redemption waive that right. The use of the word "shall" does not mean that the vendee or whoever has the right to redemption may not waive it.

VI. Did the Circuit Court Have the Discretion to Grant the Bank a Redemption Period?

¶ 41. The Bank asserts that the court erred in not setting a period of redemption for it. While acknowledging that no case has established that a judgment lienholder has the right to redemption in a strict foreclosure action, the Bank emphasizes the equitable nature of a strict foreclosure action and asserts that a court has the discretion to set a redemption period for a judgment lienholder, at least where the vendee has waived the right to redemption.[12] Although the Bank's argument is couched in terms of the court's exercise of discretion, the Bank is really challenging the court's conclusion that, under existing case law, the Bank, as a junior lienholder, did not have a right to redemption. This presents a question of law, which we review de novo. *See Gallagher*, 249 Wis. 2d 115, ¶ 15.

¶ 42. The Bank relies primarily on two cases in which the supreme court held that persons other than

---

[12] As the Bank points out, in *Hackmann v. Behm*, 207 Wis. 2d 437, 442, 558 N.W.2d 905 (Ct. App. 1996), a judgment lienholder did appeal a circuit court's order that gave a right to redeem to the vendee but not to the judgment lienholder. However, because the judgment lienholder's appeal was untimely, we did not address the merits of his appeal. *Id.*

the vendee were permitted, or might properly be permitted, the right of redemption in a strict foreclosure action. In *Coraci v. Noack*, 61 Wis. 2d 183, 186–87, 212 N.W.2d 164 (1973), the circuit court granted the right of redemption to the land contract vendee, but not to the assignee of the vendee's interest, because the land contract required the vendor's permission for an assignment and that had not occurred. The supreme court reversed, concluding that enforcement of the nonassignability clause at that point in time did not serve its purpose, it would result in a forfeiture of the assignee's interest, and "because of the equitable nature of a strict foreclosure action, the court may, in appropriate circumstances, grant a right of redemption to the assignee of the purchaser" in spite of the nonassignment provision. *Id.* at 189–90. The implicit assumption by both the court and the parties in *Coraci* seems to be that there is no question that, but for the nonassignment clause, the circuit court has the discretion to grant a period of redemption to the vendee's assignee in the appropriate circumstances.

¶ 43. In the second case the Bank refers us to, *Westfair Corporation v. Kuelz*, 90 Wis. 2d 631, 280 N.W.2d 364 (1979), the circuit court granted a period of redemption to the assignee of the person who had acquired the land contract vendee's interest in a construction lien foreclosure action; that assignee tendered the correct amount of money within the redemption period, but the land contract vendor would not accept it. *Id.* at 633–35. On the vendor's appeal, we affirmed. We concluded that the construction lienholder had bought the vendee's interest at the foreclosure sale according to the proper statutory procedures, and there was no prohibition on assigning that interest to another

person, who then held all the vendee's interest in the land contract. *Id.* at 636–38.

¶ 44. In both *Coraci* and *Westfair*, the person who did, or might, have the right to redemption was the assignee of the vendee's interest. This is significant because as assignees they had the same rights and the same obligations vis-à–vis the land contract vendor as did the land contract vendee. These two cases are thus not a departure from the long line of cases describing the equitable considerations relating to the vendor and vendee in a strict foreclosure action; instead they fit squarely within that framework. *See, e.g., Kallenbach*, 30 Wis. 2d at 657–58 (describing the factors for the circuit court to consider in deciding how long a redemption period to give the vendee and concluding with the statement that "[e]quity requires equal solicitude for the vendor and vendee").

¶ 45. In contrast, permitting a judgment lienholder to have a period of redemption introduces a new set of considerations that have not previously been recognized as part of a strict foreclosure action and that alter the balance that has been struck between the vendor and the vendee. In the Bank's scenario, the land contract vendor does not have the right to the return of the property if the vendee defaults and cannot redeem but is entitled only to the purchase price. The Bank asserts that this is all the vendor is entitled to, but that is not entirely accurate: thus far at common law the land contract vendor has been entitled to choose specific performance or strict foreclosure as a remedy, and, in the latter case, if the vendee does not fully pay within the redemption period, the land contract vendor receives the land back and is able to keep, in addition, whatever payments the vendee has made. Indeed, the contract in this case expressly provides that if the

vendor chooses strict foreclosure and Lichosyt fails to redeem, "all amounts previously paid by [him] shall be forfeited as liquidated damages for failure to fulfill this Contract and as rental for the Property . . . ."

¶ 46. Also in the Bank's scenario, the judgment lienholder redeeming the property will retain the excess over the sum of the amount owed the vendor and the amount of the judgment (and other liens, if any). It may be argued that this is equitable because the vendee has decided not to take advantage of the right to redemption and the land contract vendor is entitled only to the purchase price. But, again, this is a change in the balance that has been struck between the vendor and the vendee in strict foreclosure actions.

¶ 47. In addition, unlike an assignee of the vendee's interest, there may be more than one judgment lienholder, which raises the question of priorities among them and highlights the need for the type of specific procedures that are addressed in WIS. STAT. ch. 815. Because there is no procedure for a sale in a strict foreclosure action, it is not suited, as it presently exists, for resolving the competing interests among judgment lienholders or among the three-way configuration of vendor, vendee, and even one judgment lienholder. The Bank's reference to WIS. STAT. § 846.15 of the mortgage foreclosure statute as a model for how its interests should be addressed in a strict foreclosure action highlight the contrast between that detailed statutory procedure (*see* WIS. STAT. §§ 846.01–846.30) and the common law strict foreclosure action.

¶ 48. Finally we observe that the nature of the interest of judgment lienholders may bear on whether the right of redemption should be expanded to include judgment lienholders. In *Coraci*, 61 Wis. 2d at 192–93, where a judgment lienholder appealed, as well as the

vendee's assignee, the supreme court commented on some of the questions that were raised by the judgment lienholder's appeal, although the court found it premature to decide them.[13]

> While such a lien may be created as a result of sec. 270.79(1) Stats., [now WIS. STAT. § 806.15(1)], said statute does not grant priority to the judgment creditor over the implied equitable lien of the vendor. Similarly, [the] liens may be voided pursuant to sec. 270.91(2), [now WIS. STAT. § 806.19(4)] because of the subsequent bankruptcy action on the part of [the vendee]. . . . Such issues would necessitate discussion only if there exists a real property upon which a judgment lien may attach.

*Id.* The Bank has not referred us to a case decided after *Coraci* that more fully addresses these questions, and we have found none. However, the supreme court's recent statement in *Megal Development* on the nature of judgment liens, *see supra* at paragraph 22, suggests that a judgment lienholder does not have an interest that is comparable to that of a land contract vendee or its assignee.

---

[13] It is not entirely clear in *Coraci v. Noack*, 61 Wis. 2d 183, 186, 212 N.W.2d 164 (1973), what relief the judgment lienholder requested in the circuit court beyond asserting that his judgments against the vendees were properly docketed and thus were liens on their real property. The circuit court ruled that " 'any judgment against a vendee does not attach until the title to said property is fully conveyed.' " *Id.* at 187. Because the supreme court was remanding on the assignee's appeal for the circuit court to determine whether the assignee should be permitted to exercise the right of redemption, the supreme court concluded that "any question as to the interest of [the judgment lienholder] may be moot." *Id.* at 193. If the assignee were allowed to and did exercise the right to redemption, "no interest in real estate upon which the judgment lien could attach would remain with the [vendees]." *Id.*

¶ 49. We conclude that existing case law does not accord the right to redemption in strict foreclosure actions to judgment lienholders and that doing so would be a significant change in the law. The circuit court therefore correctly concluded that under existing case law it did not have the discretion to grant the Bank's request for a redemption period. We acknowledge that the Bank has presented some meritorious arguments in favor of a change in the existing law, but we are convinced that the supreme court, not this court, should decide whether such a change is warranted.

## CONCLUSION

¶ 50. We affirm the circuit court's judgment of strict foreclosure and its order dismissing the Bank's action for foreclosure and sale. We conclude: (1) the circuit court did not err in declining to dismiss the strict foreclosure action because of the Bank's action; (2) the circuit court properly exercised its discretion in declining to dismiss the strict foreclosure action because of the no-transfer order entered in the Bank's action; (3) the land contract vendee's quitclaim deed to the land contract vendor did not require dismissal of the strict foreclosure action; (4) Wis. Stat. § 846.30 does not prevent a land contract vendee from waiving the right to redemption in a strict foreclosure action; and (5) the circuit court correctly decided it did not have the discretion under existing case law to grant the Bank a redemption period.

*By the Court.*—Judgment and order affirmed.

¶ 51. DYKMAN, J. (*dissenting*). The property involved in this foreclosure is worth $6,668,000.[1] In 2002, Jakubow sold the property to Lichosyt on land contract for $4,350,000 with a down payment of $350,000, leaving $4,000,000 to be paid over seven years. The Republic Bank of Chicago has judgment liens against the property totaling about two million dollars. Were this a mortgage foreclosure, both Jakubow and the bank would be paid in full. The majority concludes that because this is a strict foreclosure proceeding, ungoverned except in equity, Jakubow gets the property worth $6,668,000 and the bank gets nothing. That seems inequitable to me. I see nothing in the majority opinion explaining why secondary interests should be treated differently depending on the financing structure chosen by real estate sellers and buyers. The purpose of both forms of financing is the same: financing the purchase of real estate over time.

¶ 52. The only reason the majority seems to give for its result is that it fears to go where no court has gone before. While timidity has its place, and I recognize that we cannot contradict published opinions of this court and the supreme court, *see Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997), nothing here prevents us from reaching an equitable conclusion.

---

[1] Because the trial court decided as a matter of law that Republic Bank, a person with a secondary interest in a land contract, could recover nothing, it did not address the question of the property's value. Were this a majority opinion, I would remand for this determination, among others. I take the values asserted by the bank because, assuming these values, there would be substantial equity in the property available to satisfy the bank's judgment lien. Also, I do not address other issues that would become relevant only if this were a majority opinion.

¶ 53. The parties, the majority and I agree that this case raises an issue of first impression. Claiming that issues of first impression that will effect a change in the law should be decided only by the supreme court is a cop out. We do not routinely decline to decide thorny issues of first impression. In *Kessel ex rel. Swenson v. Stansfield Vending, Inc.*, 2006 WI App 68, ¶ 26, 291 Wis. 2d 504, 714 N.W.2d 206, we noted: "Our research has disclosed no Wisconsin case that has addressed the duty to warn in a context sufficiently analogous to provide guidance in this case." Despite the lack of authority, we went on to decide the issue anyway, adopting the RESTATEMENT (SECOND) OF TORTS § 388(b) and cmt. k (1965). *Kessel*, 291 Wis. 2d 504, ¶ 32; *cf. Hottenroth v. Hetsko*, 2006 WI App 249, ¶ 25, 298 Wis. 2d 200, 727 N.W.2d 38 ("In the absence of case law directly on point, we turn to consideration of the reasoning underlying the principle that a party has a right—up until a time we have yet to define—to withdraw from a stipulation under Wis. Stat. § 767.10(1) [(2003-04)].") and *State v. Hydrite Chem. Co.*, 2005 WI App 60, ¶ 30, 280 Wis. 2d 647, 695 N.W.2d 816 ("[B]ecause there is no Wisconsin law on point, we look to cases from other jurisdictions.").

¶ 54. I conclude that addressing difficult issues of first impression is nothing new or surprising for this court. We have used the phrase "first impression" in hundreds of cases, beginning with *Zander v. County of Eau Claire*, 87 Wis. 2d 503, 510, 275 N.W.2d 143 (Ct. App. 1979). We should decide cases on the best law available, and certify the cases that meet the criteria of Wis. Stat. Rule 809.61 (2005–06).[2] *See* Wis. S. Ct. IOP

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

II.B.2 (March 16, 2000). If leaving issues of first impression for the supreme court to decide is the appropriate method to address these issues, I do not know why at least one member of the majority did not join me in my conclusion that we should certify this case to the supreme court. *See* RULE 809.61. Because we have chosen to decide this case rather than certify it, I would address the issues as follows.

¶ 55. Strict foreclosure is equitable in nature, and the trial court "should balance the equities between the parties to determine if foreclosure is merited." *Pleasure Time, Inc. v. Kuss*, 78 Wis. 2d 373, 383, 254 N.W.2d 463 (1977). Republic Bank of Chicago is a party here. But the trial court, and now the majority, have concluded as a matter of law, not equity, that the bank is not entitled to realize on its judgment lien, a right the legislature gave Republic Bank under WIS. STAT. § 806.15(1). ` Though we recognize the right of a judgment lien holder to foreclose on its lien, *see* EDWIN E. BRYANT, 6 CALLAGHAN's WISCONSIN PLEADING AND PRACTICE § 44:29 (3rd ed. 2001), the result of the majority opinion is to make this a right without a remedy when the primary interest is a land contract rather than a mortgage.

¶ 56. We have permitted the holder of an interest secondary to a land contract to pay the balance owing the vendor and receive a deed where the secondary interest is an assignment of the vendee's interest in the land contract. *See Coraci v. Noack*, 61 Wis. 2d 183, 212 N.W.2d 164 (1973). In *Coraci*, the court recognized a trial court's duty, in equity, to take the relative positions of the parties into account when deciding who gets a right of redemption, irrespective of what the land contract vendor contracted for and irrespective of the fact that the vendor had elected strict foreclosure as a

remedy. *Id.* at 189–90. Neither the trial court nor the majority opinion considers the equitable duty required by *Coraci*.

¶ 57. The supreme court has used common law and equitable principles in the absence of statutory guidance to allow a person with an interest in real estate secondary to a land contract to avoid the result the majority reaches today. In *Else v. Cannon*, 265 Wis. 510, 62 N.W.2d 3 (1953), the supreme court reviewed a circuit court decision voiding a mechanic's lien, an interest equal to Republic Bank's interest, where the land contract vendee and vendor agreed that the land contract would be cancelled. The supreme court reversed, holding that the mechanic's lien could be foreclosed, but only against the equity possessed by the land contract vendee. The majority rejects *Else* because it was not a strict foreclosure case. That is true, of course. But the majority misses the point by focusing on the nature of the action. What the supreme court really decided was that, using equitable principles, a person with an interest secondary to a land contract interest could reach the *vendee's* equity in the real estate, though not the vendor's interest.

¶ 58. *Else* gave the land contract vendors what they contracted for, the balance due on their land contract, and the mechanic lien holder everything he was entitled to. The land contract vendees were required to pay for improvements which they had commissioned, assuming that the property sold for enough to pay the vendor and the holder of the mechanic's lien. Everyone won. And that is what would have happened here had the majority followed my view, rather than focusing on only the form of the action.

¶ 59. The United States Bankruptcy Court for the Western District of Wisconsin addressed a fact situation

identical to the one before us, and reached a conclusion contrary to the one reached by the majority. In *Berge v. Sweet*, 33 B.R. 642 (Bankr. W.D. Wis. 1983), the Bankruptcy Court concluded that a land contract vendee's substantial equity in a farm could not be cut off by a judgment of strict foreclosure. Were this case tried in Bankruptcy Court on the facts before us, the trustee, armed with the judgment lien obtained by the Republic Bank of Chicago, could obtain what had been, prior to the strict foreclosure, the equity owned by Lichosyt. *See* 11 U.S.C. § 544(a) and (b) (2000); *see also Musso v. Ostashko*, 468 F.3d 99, 102–03 (2d Cir. 2006) (11 U.S.C. § 544 gives bankruptcy trustee the rights of a hypothetical perfected judgment lien creditor as of date of bankruptcy petition and consent judgment was constructive fraudulent conveyance).

¶ 60. The Restatement agrees with the Bankruptcy Court's view of land contracts. RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 3.4 (1997) provides:

A Contract for Deed Creates a Mortgage

(a) A contract for deed is a contract for the purchase and sale of real estate under which the purchaser acquires the immediate right to possession of the real estate and the vendor defers delivery of a deed until a later time to secure all or part of the purchase price.

(b) A contract for deed creates a mortgage.

¶ 61. Even the majority agrees that had Lichosyt and Jakubow been mortgagee and mortgagor instead of land-contract vendor and vendee, Republic Bank of Chicago could have protected its judgment-lien rights. The Restatement has debunked the distinction between the two financing methods by showing numerous problems with using a *sui generis* approach to land con-

tracts, and the many advantages of treating them as mortgages. *See* RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 3.4 cmt. d.

¶ 62. Comment d to § 3.4 of the RESTATEMENT OF PROPERTY: MORTGAGES is entitled "Rationale of this section." It explains the reasoning behind treating land contracts as mortgages, noting that "the rights of judgment creditors against vendor or purchaser will be rendered more predictable and secure" as a result. Further,

> to the extent that a discernable judicial trend in this area exists, it favors mortgage characterization [of land contracts]. Recent decisions in several states, including Indiana, New York, and Kentucky have adopted this approach. Florida, in most situations, can also be included in this category. California decisions stop just short of this result.

The Restatement, frequently followed in nearly every jurisdiction, will sooner rather than later render the majority's view an anachronism. If the Restatement was good enough to provide the reasoning to support our venture into an issue of first impression in *Kessel*, 291 Wis. 2d 504, ¶ 22, why is the Restatement unimportant to the extent of non-citation here?

¶ 63. An article arising out of the Restatement of Mortgages Symposium is *The contract for Deed as a Mortgage: The Case for the Restatement Approach,* 1998 BYU L. REV. 1111. The author, Professor Grant S. Nelson, concluded: "The Restatement approach to the contract for deed should be viewed as being neither 'pro-debtor' nor 'pro-creditor.' Rather, it represents an attempt to instill rationality and efficiency into the nation's land financing system." *Id.* at 1166. The extensive analysis and positive review of Professor Nelson's article is another reason why we should adopt the

Restatement's approach in a case where, because of lack of precedent, we are free to do so.

¶ 64. Wisconsin has already adopted the view of the Restatement, though in a context different from that involved here. In *Towne Realty, Inc. v. Edwards*, 156 Wis. 2d 344, 349, 456 N.W.2d 651 (Ct. App. 1990), we noted: "A plain reading of chapter 703 evinces a legislative purpose to equate land contract vendors and mortgagees."

¶ 65. Other courts have recognized that the distinction between land contracts and mortgages is one of form only. In *White v. Brousseau*, 566 So. 2d 832, 835 (Fla. Dist. Ct. App. 1990), the court said:

[A] contract for deed wherein the seller agrees to convey title to land after the buyer pays all installments of the purchase price is merely a security device and is an alternative or substitute to an immediate convey-ance of the title to the buyer with a purchase money mortgage back to the seller . . . . The form is different but the substance is the same for equitable purposes including the foreclosure procedure in the event the buyer defaults in payment of some portion of the purchase price.

*Skendzel v. Marshall*, 301 N.E.2d 641, 646 (Ind. 1973), echoes this view: "Conceptually, therefore, the reten-tion of the title by the vendor is the same as reserving a lien or mortgage. Realistically, vendor-vendee should be viewed as mortgagee-mortgagor. To conceive of the relationship in different terms is to pay homage to form over substance." In *Sebastian v. Floyd*, 585 S.W.2d 381, 383 (Ky. 1979), the court wrote:

There is no practical distinction between the land sale contract and a purchase money mortgage, in which the seller conveys legal title to the buyer but retains a

511

lien on the property to secure payment. The significant feature of each device is the seller's financing the buyer's purchase of the property, using the property as collateral for the loan.

*Bean v. Walker*, 464 N.Y.S.2d 895, 898 (App. Div. 1983), gives New York's answer to the problem we face:

.[T]he vendees herein occupy the same position as the mortgagor at common law; both have an equitable title only, while another person has legal title. We perceive no reason why the instant vendees should be treated any differently than the mortgagor at common law. Thus the contract vendors may not summarily dispossess the vendees of their equitable ownership without first bringing an action to foreclose the vendees' equity of redemption. This view reflects the modern trend in other jurisdictions.

¶ 66. Had I been able to attract the vote of one of the majority judges, I would have concluded that the distinction between land contracts and mortgages is one of name only. I would have concluded that the trial court erroneously exercised its equitable discretion by holding, as a matter of law, that the Republic Bank's interest did not survive the strict foreclosure.[3] I would have remanded with directions to order a sale of the property, and force Republic Bank to put its money where its assertions of inequity lie. No one gets hurt if

---

[3] This view raises the question of whether this appeal is moot, since a deed back is a common alternative to strict foreclosure. The parties have not argued mootness, though they have discussed the merger of title in Jakubow. But the question persists why Jakubow continued an action in which she received no more than she already had. The practical reason, of course, is that she wanted to foreclose out Republic Bank's liens. That brings me full circle to whether Jakubow could do that without a sale that would protect Republic Bank's interests.

the bank is right. If the property is worth what the bank contends, Jakubow gets what she contracted for—the balance due on the land contract. Lichosyt is home free—Jakubow and Republic Bank are paid. And Republic Bank gets property which it can sell, pay off Jakubow and apply the balance to its judgment. This is not only the modern view of this situation, it is certainly equitable. Because the majority adopts a rule in which Jakubow gets a windfall and Lichosyt and the Republic Bank get bankruptcy and nothing, respectively, I respectfully dissent.